Lurenia ROBINSON

v.

Jerry L. ROBINSON.

Supreme Judicial Court of Maine.

Argued Jan. 9, 1989.
Decided Feb. 21, 1989.

Paul A. Weeks (orally), Rudman & Winchell, Bangor, for plaintiff.

Barri L. Bloom (orally), Frederick J. Badger, Richardson & Troubh, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

HORNBY, Justice.

The primary issue on this appeal is the proper allocation of marital property. We conclude that the District Court (Calais; *Clapp, J.*) considered inappropriate factors and gave insufficient attention to the mandatory factors of nonmarital property and current economic circumstances of the parties. Consequently we vacate the judgment of the Superior Court (Washington County; *Smith, J.*) that affirmed the judgment of the District Court and remand for further proceedings.

Jerry and Lurenia Robinson were married on July 2, 1984. At the time, Lurenia Robinson was 44 years old and Jerry Robinson was 41 years old. Mr. Robinson has worked for Georgia Pacific Corp. for 15 years, and has been in management for several years. He was assigned to Maine in 1986 as a resident manager and earns a very substantial income. Mrs. Robinson has worked in various positions over the years until she quit work in 1981 and began her relationship with Jerry Robinson. It was the second marriage for both, and each has children from the previous marriage. Mr. Robinson is paying alimony and child support in that connection. No children were born to this marriage. Mrs. Robinson filed for divorce two years and four months after the wedding.

After determining what property was marital and what was nonmarital (there has been no challenge to that determination), the District Court allocated the marital property, awarding approximately eighty-five percent to Mr. Robinson and fifteen percent to Mrs. Robinson. The court gave the following explanation:

Mr. Robinson would have and did earn his income and any corporate benefits regardless of his marriage to Mrs. Robinson. The efforts and obligations domestically which she attended to during this brief marriage in no way, directly or indirectly, contributed to the amassing of any of Mr. Robinson's corporately bestowed investments or benefits including the Georgia Pacific stock options, employer fund, employee savings plan, PAYSOP, or employee retirement plan. It is specifically found that he would have earned and accumulated the marital portion of these benefits had he not been married to Mrs. Robinson. She gains a sufficient share of the fruits of his compensation during this marriage, consistent with her efforts on his behalf at home, through her sharing in their lifestyle; in his assistance in supporting her child by a prior marriage; and through other property distribution herein.

In order to make Mrs. Robinson capable of re-entering the work force as an assistant physical therapist, the District Court also ordered Mr. Robinson to pay either a lump sum of $12,000 or, at Lurenia Robinson's option, education costs at the University of Maine at Machias up to a maximum of $6,350 per year for two years, reflecting the catalog costs of tuition, transportation, and room and board for a resident student. Finally, the District Court found that Mrs. Robinson's reasonable attorney fees should not exceed $2,000, that she was able to pay that amount and that, as a result, no attorney fees should be awarded. Mrs. Robinson attacks the District Court's award for neglecting her services as a homemaker, failing to start its analysis with a presumption of equal treatment, awarding insufficient alimony, and failing to award attorney fees.

The Maine statute directs the divorce court to "divide the marital property in such proportions as the court deems just" and provides explicit criteria that the divorce court is to consider:

A. The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

B. The value of the property set apart to each spouse; and

C. The economic circumstances of each spouse at the time the division of property is to become effective....

19 M.R.S.A. § 722–A (1981).

■ We do not agree that the District Court ignored Mrs. Robinson's contribution as a homemaker. The statute directs that homemaker services are to be examined insofar as they contribute "to the acquisition of the marital property." The District Court's factual finding concerning the value of Mrs. Robinson's contribution as homemaker in this very short, midlife marriage, although not generous, is not clearly erroneous. Unlike a spouse's assistance at the beginning of a career or over a span of years or in bringing up children, Lurenia Robinson's two years of services in the home (Jerry Robinson contributed there as well) did not significantly contribute to the growth of the marital estate. Mr. Robinson's income level was already in place, his stock options and retirement benefits were assured, and the marriage did not free him from significant diverting obligations such as child care.

■ We agree with Mrs. Robinson, however, that in other respects the District Court abused its discretion, *Axtell v. Axtell*, 482 A.2d 1261, 1263 (Me.1984), in dividing the marital property. Although the factors enumerated in the statute are explicitly not exclusive, 19 M.R.S.A. § 722–A (1981); *Fournier v. Fournier*, 376 A.2d 100, 103 (Me.1977), we have no hesitation in saying that two of the factors identified by the District Court are not legitimate for consideration and that it erroneously omitted consideration of two of the mandated factors. First, the fact that a spouse shares in the "lifestyle" of the other spouse during the marriage has no bearing upon the proper allocation of marital property at its dissolution. Sharing in the lifestyle of the other spouse is inseparable from the institution of marriage. This joint consumption is not to be perceived as a benefit conferred by a wealthier spouse upon a poorer spouse, thereby somehow subtracting from what would otherwise be a proper allocation of marital property at the time of divorce. Second, the voluntary support of a spouse's child during marriage is perhaps a generous gift at the time it occurs, but it has no bearing on how the marital property should be distributed between the two spouses at divorce (except as it affects their economic circumstances at that time). Third, the District Court ignored the second and third statutory factors: the value of each spouse's nonmarital property and, particularly, "[t]he economic circumstances of each spouse at the time the division of property is to become effective...." Jerry Robinson's nonmarital property is $58,922.77. Lurenia Robinson's is $5,550.00. Mr. Robinson has a base salary of $87,500 with a gross income in 1986 of $114,000. Mrs. Robinson has not worked since 1981 (when she earned $17,000) and must attend college for two years to resume her place in the work force. Nevertheless, the District Court awarded $143,010.25 in marital property to Mr. Robinson and $21,650 to Mrs. Robinson and effectively assigned Mrs. Robinson to a student dormitory without provision for medical insurance, vacation arrangements or spending money for the next two years. The District Court's reasoning that its decree permitted Lurenia Robinson to "[gain] a sufficient share of the fruits of his [Jerry Robinson's] compensation during this marriage, consistent with her efforts on his behalf at home" reflects a misunderstanding of the ultimate issue. The "fruits" are no longer "his compensation" that Mrs. Robinson is seeking part of, but *marital* property to be divided in accordance with the statute. Assessing Lurenia Robinson's "efforts ... at home" addresses only one of the statutory factors. The District Court failed to consider Mr. and Mrs. Robinson's respective economic circumstances *now*, § 722–A(1)(C), including their nonmarital property, § 722–A(1)(B), in making its decision on what is a just division of the marital property.

■ We agree with Mrs. Robinson's argument that under the statute the divorce court is not merely rescinding a contract and trying to restore the parties to

the economic positions they would have held if there had been no marriage. To the extent the District Court's property division here reflects such an approach, it is in error. It does not follow, however, that the divorce court must justify any deviation from an equal division of the marital property. The statute directs a "just," not an equal division. It specifies three critical factors which carry no presumption either in favor of or contrary to an equal allocation. Soon after enactment of the law we appeared to recognize a presumption of equality, *Boyd v. Boyd,* 421 A.2d 1356, 1359 & n. 5 (Me.1980). Later, however, we backed away from any such mechanical approach, *see Axtell v. Axtell,* 482 A.2d 1261, 1264 (Me.1984) (speaking pejoratively of "mechanistic adherence to simple notions of 'equality'"), and focused instead on the criteria enumerated by the legislature and the statutory command to create a "just" division. *Id.* at 1263 (trial court's statement that marital assets should be divided approximately equally "appears to violate the command of § 722–A(1) which calls for a 'just' rather than an equal division of marital assets"). *See also Carter v. Carter,* 419 A.2d 1018, 1023 (Me.1980) (the statute "permits the court to make a more equitable division of the property rather than a mechanical one-half to each"). Although the idea of an equal allocation may certainly be entertained by a divorce court, it carries no presumptive weight either in its favor or against it.

We remand the case so that the District Court may reconsider what is a just division of the marital estate, taking into account the economic circumstances of the parties, including their nonmarital property, and ignoring the sharing of lifestyle and voluntary contributions to child support during the marriage. Because the matters are interrelated, we also vacate the award of $12,000 or $6,350 in educational expenses per year for two years and the denial of attorney fees. On the latter issue, we point out that Mrs. Robinson's lawyer has now successfully prosecuted two appeals from the District Court in addition to the litigation carried on before that court.

The entry is:

Judgment of the Superior Court vacated and remanded to the Superior Court to vacate the judgment of the District Court and remand to the District Court for further proceedings.

All concurring.