MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 67
Docket:       Kno-12-445
Submitted
 On briefs:   April 25, 2013
Decided:      July 16, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

## HEATHER J. THUMITH

v.

## KENNETH D. THUMITH

LEVY, J.

[¶1]   Heather J. Thumith appeals from a divorce judgment of the District Court (Rockland, *Worth, J.*), challenging the judgment's marital property, marital debt, and spousal support provisions.  We vacate the judgment and remand for further proceedings.

## I.  BACKGROUND

[¶2]   Heather and Kenneth, both forty-one years old, were married for approximately thirteen and a half years.  They have two children, ages four and eleven.

[¶3]   There is a significant earning disparity between Kenneth and Heather. Kenneth has a college degree and a stable job with an annual base salary of $105,000 and annual bonuses that fluctuate in the range of $12,000 to $19,000.

2

Heather attended college but did not complete her degree, having left college after she and Kenneth married. As recently as 2008, Heather earned approximately $30,000 per year as a general supervisor at the group home where she is currently employed. She left the position a few months before giving birth to her and Kenneth's second child in 2008. She returned to work at the group home in 2010, but not as the home's general supervisor. She currently works thirty-five hours per week as a program supervisor, for which she earns approximately $19,000 per year.

[¶4] The parties separated in June 2011 and subsequently stipulated to shared parental rights and responsibilities for their two children. The court found that, for purposes of calculating child support, Heather has an annual gross income of $19,000. Pursuant to the child support guidelines, and based on the gross incomes of the parties, the court ordered Kenneth to pay Heather child support of $262 per week.

[¶5] The court also determined that this was an appropriate case for general spousal support pursuant to 19-A M.R.S. § 951-A(2)(A) (2012). The court ordered Kenneth to pay Heather spousal support of $1000 per month for three years, then $750 per month for two years, and then $500 per month for a year and a half. The court found that with the passage of time, Heather can find a better paying job and will have more time to work because the children will require less of her care.

[¶6]  As for the disposition of marital property and the allocation of marital debt, the court stated:

> The difference between the parties is [Kenneth's] superior earning ability at the present time.  This facet of the parties' economic circumstances could call for an unequal distribution favoring the lesser-earning party.  However, the evidence and inferences to be drawn therefrom, as discussed within this Judgment, strongly support an approximately equal distribution of marital assets and marital debts.

The court awarded Heather the marital home in Rockland, valued at approximately $130,000 and subject to a $121,000 mortgage, which the court ordered Heather to refinance within one year or else sell the property; household furnishings valued at $5000; a vehicle valued at $12,000; and $5000 in a 401(k) account.  The court awarded Kenneth a vehicle valued at $500 and $27,884.14 in a 401(k) account.  As for the marital debt, the court allocated $16,498.61 in marital credit card debt to Heather, and $14,052.20 of debt to Kenneth, consisting of $4,498.50 in marital credit card debt and $9,553.70 in student loan debt Kenneth incurred during the marriage.  Kenneth was also ordered to be solely responsible for $7200 in nonmarital student loan debt.  The judgment's division of property and marital debt resulted in Heather receiving property with a net value of $14,501.39, and Kenneth receiving property with a net value of $14,331.94.  The court noted, however, that it awarded Heather $5000 from the 401(k) account because Heather "would be required to market and sell the property, circumstances likely to take up time and

4

reduce her net proceeds[,]" in order to have use of the equity in the marital home. Thus, the net value of the property allocated to Heather was effectively $9,501.39 if she failed to refinance, and not $14,501.39.

[¶7] Heather requested that the court make further findings, pursuant to M.R. Civ. P. 52(b), including findings regarding her ability to refinance, the valuation of the home if she is forced to sell because she is unable to refinance, and the court's decision to allocate a large portion of marital debt to her. The court denied her motion. Heather appeals, contending that the court erred in its division of the marital property and debt, and in its award of spousal support.

## II. DISCUSSION

[¶8] We review a trial court's division of marital property and marital debt for an abuse of discretion, *Chamberlin v. Chamberlin*, 2001 ME 167, ¶ 4, 785 A.2d 1247, and its underlying factual findings for clear error, *Brown v. Brown*, 2007 ME 89, ¶ 16, 929 A.2d 476.

[¶9] In a divorce proceeding, the court must divide the marital property and debt "in proportions the court considers just after considering all relevant factors." 19-A M.R.S. § 953(1) (2012); *Hess v. Hess*, 2007 ME 82, ¶ 15, 927 A.2d 391. Factors the court must consider include those enumerated in 19-A M.R.S. § 953(1)(A)-(C): "[t]he contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker," "[t]he value of the

property set apart to each spouse," and "[t]he economic circumstances of each spouse." However, the statutory factors are not exclusive, and a court may also consider other relevant, legitimate factors. *See* 19-A M.R.S. § 953(1); *see also Robinson v. Robinson*, 554 A.2d 1173, 1175 (Me. 1989).

[¶10] Here, the court found that Kenneth has a significantly greater earning capacity than Heather, and properly recognized that this finding would support an unequal division of marital property and debt that favored Heather. *See* 19-A M.R.S. § 953(1)(C). The court concluded, however, that the circumstances of this case nevertheless warranted an equal division of marital property and debt. The judgment does not explicitly identify the circumstances that support this conclusion, and the court denied Heather's motion for further findings related to the issue. We therefore look to the findings in the judgment that potentially support the judgment's equal division of marital property and debt. We identify three such findings.

[¶11] First, the court found that Heather made a "unilateral decision" to stay home with the children for two years after giving birth in 2008, instead of immediately returning to the workforce. There are certainly circumstances in which a court may find that a wage-earning spouse has made a greater contribution to the acquisition of marital property than his or her homemaking spouse, thus weighing in favor of a division of marital property and debt that prefers the

wage-earning spouse. *See, e.g., Robinson*, 554 A.2d at 1174-75 (concluding that a wage-earning spouse made greater contributions to the acquisition of marital property during his two-year, mid-life marriage where his "income level was already in place, his stock options and retirement benefits were assured, and the marriage did not free him from significant diverting obligations such as child care"). However, the court did not find that Kenneth deserves greater credit for the parties' acquisition of marital property, and we will not make that inference because the court denied Heather's motion for further findings of fact on that issue. *See Douglas v. Douglas*, 2012 ME 67, ¶ 27, 43 A.3d 965 ("On our review of an appeal from a judgment when a motion for findings has been filed and denied, we cannot infer findings from the evidence in the record."). The undisputed evidence was that Heather made significant contributions to the parties' marriage as a homemaker, parent, and wage-earner. Absent a finding that Heather's decision to stay home for two years after the birth of their second child was unreasonable, Heather's decision not to return to work immediately—unilateral or otherwise—does not support the judgment's division of marital property and debt.

[¶12]  Second, the court found that Heather took two trips to Europe, when instead she could have been conserving marital resources in anticipation of the divorce. The record reflects that the first of the two trips occurred before the parties separated. Although a spouse's excessive spending may support a finding

of economic misconduct, which can inform the court's division of marital property and debt, *see Nadeau v. Nadeau*, 2008 ME 147, ¶ 46, 957 A.2d 108 (per curiam), in this case, the court explicitly found that neither party engaged in economic misconduct. This finding was not clear error.[1] *See Catlett v. Catlett*, 2009 ME 49, ¶ 31, 970 A.2d 287 ("A court's finding that a party to a divorce did or did not engage in economic misconduct is reviewed for clear error." (quotation marks omitted)). As such, the two trips to Europe did not provide a basis to disfavor Heather in the division of marital property and debt. *Cf. Robinson*, 554 A.2d at 1175.

[¶13] Third, the court found that Heather "could be earning more money than she now does," "could be working a 40-hour week," and "has not undertaken a meaningful search for more lucrative work" since the parties separated. Findings related to voluntary underemployment, such as these, are a relevant consideration in fashioning a just division of marital property and debt insofar as they pertain to a spouse's earning capacity and economic circumstances. *See* 19-A M.R.S. § 953(1)(C). The court did not expressly find, however, that Heather was voluntarily underemployed. Indeed, the court found that for the purposes of child support, her gross income was approximately $19,000 per year, and not $30,000

---

[1] Because the court did not err in finding that neither party engaged in economic misconduct, there is no merit to Heather's related contention that the court erred in its division of property and debt by not considering Kenneth's economic conduct prior to the divorce.

per year as she had previously earned. Further, even if the court had expressly found that Heather has an earning capacity of $30,000 per year, rather than $19,000 per year, that earning capacity would be about one-fourth of Kenneth's earning capacity, as opposed to about one-sixth of his earning capacity. In either case, the gulf between the parties' expected post-marriage earnings is vast, and does not constitute a circumstance that would justify an equal division of marital property and debt pursuant to 19-A M.R.S. § 953(1)(C).[2]

[¶14] In short, the judgment's express findings do not provide a basis to depart from the court's observation that the significant difference between the earning capacities of the parties would support an unequal distribution of marital property and debt favoring Heather.[3] *See* 19-A M.R.S. § 953(1); *Hess*, 2007 ME 82, ¶ 15, 927 A.2d 391; *Robinson*, 554 A.2d at 1175.

[¶15] We vacate the judgment and remand for reconsideration of the property distribution and debt allocation. Because the court on remand must

---

[2] The judgment also noted that Kenneth "probably needs to upgrade his vehicle and to find a more suitable apartment for his parenting time with the children." This finding is a relevant consideration in the division of marital property and debt. *See* 19-A M.R.S. § 953(1)(C) (2012). However, here, the judgment expressly accounted for this economic circumstance in its spousal support provision.

[3] Heather also challenges the judgment's determination that she will receive property worth $9000 by being assigned the equity in the marital home. The judgment requires Heather to sell the home if she cannot refinance within one year. The court denied Heather's request for findings as to whether it was reasonably possible for her to refinance. Based on the findings that were made as to Heather's earnings and the debt assigned to her, she contends, and we agree, that it is not reasonably probable that she can successfully refinance, or that, if the home is sold and she bears sole responsibility for the costs of sale, she would receive proceeds approaching the $9000 in equity identified in the judgment. *See Douglas v. Douglas*, 2012 ME 67, ¶ 27, 43 A.3d 965.

reconsider many aspects of the parties' financial relationship, it must also reconsider the issues of spousal support and attorney fees. *See* 19-A M.R.S. § 951-A(5)(B), (H), (P)(1) (2012); *Warner v. Warner*, 2002 ME 156, ¶ 54, 807 A.2d 607. We therefore need not reach the issue of whether the court erred in its order of spousal support. We note, however, that contrary to Heather's contention, a court may order spousal support that automatically decreases over time, where the evidence supports a reasonable prediction that the payee spouse will have a reduced need for spousal support in the future, and the amount of the descending spousal support accounts for the statutory goals of such support. *See* 19-A M.R.S. § 951-A(2) (2012); *see also, e.g.*, *Fitzpatrick v. Fitzpatrick*, 2006 ME 140, ¶¶ 5-6, 12, 910 A.2d 396; *Raisen v. Raisen*, 2006 ME 49, ¶¶ 4, 8, 896 A.2d 268.

The entry is:

> Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

---

**On the briefs:**

Sarah I. Gilbert, Esq., Elliott & MacLean, Camden, for appellant Heather Thumith

Robert J. Levine, Esq., and Darby C. Urey, Esq., Strout & Payson, P.A., Rockland, for appellee Kenneth D. Thumith

10

Rockland District Court docket number FM-2011-287

FOR CLERK REFERENCE ONLY