2006 ME 118

Ceri ZEOLLA

v.

Michael ZEOLLA.

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 14, 2006.

Decided: Oct. 17, 2006.

John Alsop, Alsop, Mohlar & Ketterer, Norridgewock, ME, for plaintiff.

Anthony P. Shusta II, Madison, ME, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SILVER, J.

[¶ 1] Ceri Zeolla appeals from a divorce judgment entered in the District Court (Skowhegan, *Jabar, J.*) that divided marital property and awarded her spousal support. Ceri argues that the court erred in applying Maine law to determine the marital or nonmarital status of the property located in Massachusetts, and in calculating its spousal support award. We conclude that the District Court, having personal jurisdiction over both parties, properly applied Maine law to equitably distribute the marital property, regardless of its location. We further determine that the court's award of spousal support was reasonable. Accordingly, we affirm the judgment.

## I.  BACKGROUND

[¶ 2] Throughout their marriage, the Zeollas with modest income, but with much frugality, amassed significant assets. In 1976, the recently married Zeollas moved into their home in Sudbury, Massachusetts. A year before the Zeollas married, Michael purchased the land for the home, and, as a lifelong plumber, financed the purchase with a forty thousand dollar construction loan, which the Zeollas paid off shortly before their divorce. The Sudbury home remained the Zeollas' principal residence throughout most of their marriage.

[¶ 3] In 1982, the Zeollas purchased Jackson Pond and the land surrounding it located in Somerset County, the first in a series of Maine real estate acquisitions. The Zeollas later purchased a farmhouse in Bingham, and added to the acreage of that parcel by purchasing a 130–acre wood lot adjoining the farm. The Zeollas also increased their Jackson Pond parcel, later purchasing a field near the pond, and another parcel surrounding the pond. Originally, Michael and Ceri intended to retire to the Somerset County property. By selling both hay and wood, the farm and land holdings were to provide a source of income during retirement. For a number of years, Ceri worked with a professional to develop a forestry management plan that would produce about $20,000 each year in income.

[¶ 4] At the age of eighteen, Michael began purchasing Honeywell Corporation stock. This purchasing continued for thirty-seven years, and the stock had a value of over $300,000 at the time of the divorce proceeding. Additionally, beginning in 1965, Michael, as part of his membership in a plumber's union, contributed to a pension plan. Michael also maintained both a checking and a savings account.

[¶ 5] After first spending a portion of the year alone in Bingham, and later permanently moving there, Ceri filed for divorce in 2004. Following a bench trial, the Dis-

trict Court entered a divorce decree that divided the couple's marital property. Determining that the Sudbury home was part marital, part nonmarital property, the court awarded the entire home to Michael. The court also awarded Michael the marital portion of the Honeywell stock, thus granting the full value of the stock to him. The court evenly divided the bank accounts and pension. Ceri, however, received most of the Maine real estate and therefore most of the value of the wood to be harvested from the property. Ultimately, the court awarded Ceri more of the marital property, but Michael's total property value, which included nonmarital property, was larger than Ceri's. Ceri then brought this appeal.

## II. DISCUSSION

### A. Property Distribution

[¶ 6] A court may equitably distribute all the marital property upon the entry of a divorce decree pursuant to 19–A M.R.S. § 953 (2005). Ceri contests the court's use of section 953 to divide the Massachusetts-based property, and argues that the court should have applied Massachusetts law to property located in that state. We review questions of law de novo. *Collins v. Trius, Inc.*, 663 A.2d 570, 572 (Me.1995).

[¶ 7] Subsection 953(1) provides that in a divorce proceeding "the court shall set apart to each spouse the spouse's property and shall divide the marital property in proportions the court considers just after considering all relevant factors . . . ." 19–A M.R.S. § 953(1). "Marital property" is defined in subsection 953(2). We have interpreted section 953 as granting broad discretion to the divorce court to achieve an equitable distribution of marital property in every case. *Fournier v. Fournier*, 376 A.2d 100, 103 (Me.1977) (interpreting the original codification of section 953).

[¶ 8] Section 953 makes clear the court's authority to divide all of the property under Maine law, regardless of its location. It imposes no restriction on the power of the court to distribute out-of-state property, instead directing the court to distribute each "spouse's property" and "the marital property." 19–A M.R.S. § 953(1). Subsection (2) furthers this intent by making no distinction based on the location of the property. As a whole, the section seeks to dispose "of all issues related to the parties' property upon the entry of a divorce decree . . . ." Levy, *Maine Family Law* § 7.1 at 7–3 (5th ed. 2006). Ceri invoked the jurisdiction of the Maine court and must abide by its results.

[¶ 9] Preventing a court from using Maine law to distribute all the marital property would be anathema to the policy of granting the divorce court such large equitable powers. In our increasingly transient society, a court could be limited by the property distribution laws of every state a migratory marriage touched.

[¶ 10] Both the plain language and the policy behind section 953 dictate that the court shall use the broad discretion it is granted under that section to equitably divide all the marital and nonmarital property, wherever that property is located. The court, having personal jurisdiction over both parties, had jurisdiction to divide all of the parties' property.

### B. Spousal support

[¶ 11] Ceri also argues that the court should have awarded her greater spousal support. We review the trial court's determination of spousal support "with great deference." *Bradshaw v. Bradshaw*, 2005 ME 14, ¶ 13, 866 A.2d 839, 843. The trial court has broad power to award spousal support "so long as the amount is reasonable and the court takes

into account the payor spouse's ability to pay and the payee spouse's needs and opportunities." *Id.* (quoting *Pelletier v. Pelletier,* 597 A.2d 60, 62 (Me.1991)).

[¶ 12] The court's award was well within its discretion.

The entry is:

Judgment affirmed.