2012 ME 100

**Renée MILIANO**

v.

**Alfred MILIANO.**

Supreme Judicial Court of Maine.

Argued: Sept. 13, 2011.
Decided: July 24, 2012.

F. David Walker, IV, Esq., Charles F. Budd, Jr., Esq. (orally), Rudman & Winchell, Bangor, for appellant Alfred Miliano.

Joseph W. Baiungo, Esq. (orally), Belfast, for appellee Renée Miliano.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Alfred Miliano appeals from a divorce judgment entered by the District Court (Belfast, *Worth, J.*), contending that the court clearly erred or abused its discretion by (1) erroneously classifying his nonmarital real property as marital property and then awarding certain parcels to Renée Miliano, and (2) awarding Renée general spousal support of $2500 per month until the death of either party or her remarriage. Renée argues that the court acted within its discretion because Alfred did not prove that the real estate at issue was entirely his nonmarital property. She further argues that equitable factors justified a lifetime spousal support award notwithstanding the parties' seven-year marriage. Because the evidentiary record was inadequate to overcome the conclusion that property purchased by Alfred before the marriage is nonmarital property, *see* 19–A M.R.S. § 953(1), (2) (2011); M.R. Evid. 301(a), and we are uncertain of the trial court's intention regarding the allocation of property in lieu of spousal support, we remand for clarification or reconsideration by the trial court, *see* 19–A M.R.S. § 951–A (2011).

## I. FACTS

[¶ 2] At the time of the divorce hearing in 2010, Alfred Miliano was age fifty-eight and Renée Miliano age fifty-three. They met in 1982, moved in together within a few months, and eventually married in April 2001. In the intervening eighteen years they maintained a household together as partners. Renée used her income from a $75,000–per–year job at the Bucksport paper mill to pay household expenses and meet their two children's needs, which allowed Alfred to use the income from his position as a chief engineer in the Merchant Marine to buy real estate and make other investments.

[¶ 3] When Alfred wanted Renée to accompany him on trips at sea, the two sometimes held themselves out as a married couple. Alfred did not want to actually get married, primarily because he did not want to be subject to Maine's income tax, and Renée was not eager to marry either. Alfred was charged in April 2001 with six counts of failing to file a Maine tax return; he and Renée were married nine days later. Alfred was convicted in July 2001 following a no contest plea; his sentence included payment of $170,000 in restitution, which the court found that he paid during the marriage using marital funds.

[¶ 4] After working at the paper mill for twenty years, in 1999 or 2000 Renée left her job at Alfred's urging in order to stay home with the children. While still working, she stopped contributing to her 401(k) plan because Alfred "told me that he didn't want me to do that because he wanted my money to be available. . . . [H]e said I didn't need a pension plan . . . . [because] [h]e was my pension plan."

[¶ 5] In May 2008, Renée filed a complaint for divorce. Since February of that year, Renée has earned approximately $25,000 per year working full time at a local bank, and a small amount working as an aesthetician. As a first engineer in the Merchant Marine, Alfred earned $124,589 in 2008, and $112,000 in 2009. The court found Alfred's trial testimony concerning his expenses to be less than wholly credible. In October 2010, the court entered a divorce judgment that, in part, awarded Renée general spousal support of $2500 per month until her remarriage or the

death of either party,[1] and disposed of six parcels of real estate by awarding three to Alfred and three to Renée.

[¶ 6] A primary issue in this appeal is the trial court's disposition of the six parcels. Alfred acquired three of the properties before his relationship with Renée began, and acquired three others using his wages while they lived together but before they were married. None of the properties is subject to a mortgage. Five are titled solely in Alfred's name, and one is titled solely in Renée's name. At trial, Alfred and Renée agreed on the present value of the properties,[2] but with one exception neither presented any evidence concerning their value when first purchased, nor did either introduce any evidence concerning their value in April 2001 when they were married.

[¶ 7] Regarding each of the properties, the court found that Renée and Alfred "have invested significant marital funds and marital labor," concluding that in addition to the original nonmarital interest, "there is for each of the parcels both a marital component, that is, value acquired after marriage, and an equitable claim for Ms. Miliano to a portion of value based in the circumstances of [the parties'] household and financial relationship pre-marriage." The court did not identify or quantify the equity claim that it found to exist,[3] nor could it quantify the nonmarital and marital components given the absence of any evidence concerning the properties' values at the time of the marriage.

[¶ 8] Unable to make any precise calculations, the court concluded "that a more general division is the only reasonable choice." It ordered "a fair and just distribution" of the parcels, resulting in about two-thirds of their total value being awarded to Alfred and one-third to Renée. The court was careful to note that "[t]his division of property reduces the amount of what would otherwise have been an appropriate spousal support award" but made no mention of whether the division was an attempt to award reimbursement support.

[¶ 9] Alfred timely appealed from the judgment, contesting both the court's allocation of the six properties and its spousal support award.

## II.  DISCUSSION

[¶ 10] Over thirty years ago, we first confronted the challenge of dividing property in a divorce when one party has brought nonmarital real estate into the marriage. In *Grishman v. Grishman,* we noted:

> This appeal raises the novel issue of whether a divorce court may properly treat as marital property, which is to be justly divided in the divorce judgment, an interest in real estate that one party acquired prior to his marriage and at a

---

1.  After concluding that "[g]eneral and reimbursement support for Plaintiff from Defendant are appropriate," the court characterized the $2500 per month award only as general support.

2.  "Present value" refers to the value at the time of the divorce hearing.

3.  The use of the terms "equitable" and "equity" often create confusion. In common parlance, "equitable" can simply connote the general concepts of fairness and impartiality—as in the requirement of 19–A M.R.S. § 953(1) (2011) that distributions of marital property be "just"—or it can be used to describe the grant of authority for a court to exercise jurisdiction over specific claims arising from the law of equity. While we have no reason to believe that the court's disposition in this matter was anything other than fair and just, our use of the words "equity" or "equitable" in this opinion refers to equity jurisdiction.

time when the two parties were unmarried cohabitants.[4]

407 A.2d 9, 10 (Me.1979).

[¶ 11] It is no longer novel for couples to live together for periods of time during which they purchase or obtain property, individually or together, and later marry. Both the parties seeking a divorce following a marriage that was preceded by a significant period of cohabitation and commingling of assets, and the trial courts that are confronted with these issues, face significant challenges in unraveling the complex facts within the specific statutory framework established by the Legislature. These challenges, however, are not insurmountable. By applying a clear, step-by-step analysis pursuant to statutory mandates, and allocating appropriate burdens of proof along the way, counsel and the courts can make their way through the potential legal quagmire that these cases often present.

[¶ 12] The parties agreed at trial on the present value of the six properties, but neither introduced evidence of (i) their values when originally purchased, with one exception; (ii) their values in 2001 at the time of the marriage; or (iii) increases in the values of the properties resulting from Renée's contributions prior to or during the marriage. The lack of any evidence of the historical value of the properties left the court in the difficult circumstance of being unable to determine the difference between the value of the properties at the time of the marriage and the time that the divorce complaint was filed, and thereby quantify the nonmarital and marital property components that it found to exist.

Each party now points to the other as responsible for that failure of proof, and each asserts that the other must suffer its consequences.

■ [¶ 13] To resolve the dispute we examine each step of the statutorily-mandated process that the court is required to follow when disposing of property in a divorce proceeding, and identify the shifting burdens of proof applicable at each step. We do this because, as occurred in this case,

> [w]hen faced with evidence that fails to provide [it] with a meaningful basis to undertake the analysis required by 19–A M.R.S. § 953(1),[5] the court must consider the applicable burden of proof. If the evidence in the record, and the reasonable inferences to be drawn from such evidence, are inadequate to provide a basis for any reasoned finding upon a particular issue, the issue should be resolved against the party with the burden of proof.

*Ayotte v. Ayotte*, 2009 ME 20, ¶ 7, 966 A.2d 883. Reduced to its essence, this is, as Renée maintained at oral argument, a burden of proof case, and identifying the party who had the burden at the point where the failure of proof occurred also determines the party who must bear the consequences of that failure.

■ [¶ 14] Section 953(1) establishes the three-step process that a court must use when disposing of property in a divorce judgment. *Id.* ¶ 6. The court must "(1) determine what of the parties' property is marital and non-marital, (2) set apart

---

4. The court confirmed the long-standing rule that property acquired by one party prior to marriage may not be treated as an asset of the marriage. *Grishman v. Grishman*, 407 A.2d 9, 12 (Me.1979).

5. Section 953(1) provides, in part: "In a proceeding for a divorce ... the court shall set apart to each spouse the spouse's property and shall divide the marital property in proportions the court considers just after considering all relevant factors...." 19–A M.R.S. § 953(1).

each spouse's non-marital property, and (3) divide the marital property between them in such proportion as the court deems just." *Id.* This method is not discretionary—the statute mandates that the court "*shall* set apart to each spouse the spouse's property and *shall* divide the marital property." 19–A M.R.S. § 953(1) (2011) (emphasis added). Accepting the facts found by the trial court, we examine its application of the statutorily-required process.

## A. Nonmarital, Equitable, and Marital Property Interests

### 1. Nonmarital Interests

[¶ 15] We review a court's classification of property as marital or nonmarital for clear error. *Bond v. Bond,* 2011 ME 54, ¶ 10, 17 A.3d 1219. The first step in the classification process is to compare the date each property was acquired to the date of the marriage. Property is acquired as it is paid for. *Williams v. Williams,* 645 A.2d 1118, 1120 (Me.1994). Here the court found, and Renée does not dispute, that the six parcels at issue were purchased by Alfred using his wages prior to the marriage.[6]

[¶ 16] Because "[p]roperty acquired prior to the marriage is separate," and "[o]nce characterized as nonmarital, the court is required to set it apart to the owner," *Long v. Long,* 1997 ME 171, ¶ 9, 697 A.2d 1317, after Alfred made an initial showing that he acquired the six parcels prior to the marriage, the court was, absent evidence of another interest, required to set the properties apart to him. A divorce court has no discretion to ameliorate what it views as an unfair overall result through its distribution of nonmarital property—such property is simply "not subject to the court's [general] equitable powers of distribution," *id.,* and section 953(1) commands that "the court *shall* set apart to each spouse the spouse's property," 19–A M.R.S. § 953(1) (emphasis added). The general equity considerations applicable to the division of marital property, *see* 19–A M.R.S. § 953(1) ("the court . . . shall divide *the marital property* in proportions the court considers just" (emphasis added)), are not applicable to the disposition of nonmarital property, *see* Levy, *Maine Family Law* § 7.5[1] at 7–24 (2010 ed.).

[¶ 17] Concerning the single property purchased by Alfred before the marriage but titled in Renée's name, the court found that it was a gift to Renée, rejecting Alfred's claims that the transaction was merely a stratagem to shield him from Maine tax liability and that he intended to retain sole ownership of the property and later pass it on to his sons. *See Theberge v. Theberge,* 2010 ME 132, ¶ 18, 9 A.3d 809 (stating that "the trial court is not bound to accept any testimony or evidence as fact"). Accordingly, that property, acquired by gift prior to the marriage, was Renée's nonmarital property to be set aside to her, absent proof of a marital component of value acquired after the marriage. *See* 19–A M.R.S. § 953(2)(A) (2011) (exempting property acquired by gift from the definition of marital property).

### 2. Equitable Interests

[¶ 18] In addition to Alfred's nonmarital interest, the court found that

---

6. Renée does contend that before the marriage she contributed resources and efforts to maintain and improve the properties, and that her payment of other family expenses, including payment of some of Alfred's child support obligations, freed up funds that Alfred used to acquire the three properties that were acquired after the parties began their relationship.

Renée had an equitable interest in each of the five properties titled in Alfred's name. In divorce cases where there is evidence of an equitable claim based on a specific legal theory,[7] the court must decide those claims in order to identify and then set aside each party's nonmarital property. Such claims between married persons would, outside of a divorce proceeding, ordinarily be handled by way of a civil suit. *See Libby v. Lorrain*, 430 A.2d 37, 39 (Me.1981) ("Partition is ... available to joint owners of real estate through the equity jurisdiction of the Superior Court."); 14 M.R.S. §§ 6501–6525 (2011) (regulating actions to partition real estate as a matter of civil procedure); *cf.* 19–A M.R.S. § 806(1) (2011) (authorizing one spouse, during marriage, to assert an equitable claim to a property for which the other spouse holds legal title).

[¶ 19] When parties who have acquired property before marriage later marry, in a subsequent divorce proceeding they need not file a separate action in equity in order to have the court establish the ownership rights of premaritally-owned property. That is true because 19–A M.R.S. § 953(1) expressly requires the District Court, in the context of a divorce, to "divide the marital property" after considering, among other factors, "[t]he value of the property set apart to each spouse." Section 953 thus conveys to the District Court jurisdiction to determine and rule on all legal and equitable claims to property between spouses, even when the property was acquired outside of the marriage. *See Zeolla v. Zeolla*, 2006 ME 118, ¶ 10, 908 A.2d 629.

[¶ 20] To enable the court to undertake this analysis, however, the parties must present their claims regarding premaritally-acquired property during the divorce proceeding, including the crucial evidence of the values of the property at critical points in time. The court's task to set apart nonmarital property and then factor the value of that property into its division of marital property cannot be completed unless and until the nature and extent of each spouse's interest in *any* nonmarital property can be determined, including the nonmarital property the spouses happen to own together.

[¶ 21] In this case, Renée did not assert any equitable claims in her pleadings, neither party raised any equitable claims during the trial, and neither asserted any right to equitable relief in the post-trial proposed judgments each submitted to the court. This history may help to explain why the parties did not introduce evidence necessary for the court to identify and fully analyze a specific equitable claim recognized under Maine law. The first mention of equity appeared in the court's judgment and may have been intended to support a reimbursement spousal support award. Insofar as the trial court found that Renée had an equitable claim to the five properties titled solely in Alfred's name, it is critical to our analysis that at trial Renée did not argue for, or offer evidence to quantify, any *nonmarital* equitable interest in any of the five properties. The court's statutory authority did not otherwise allow it to treat such property as marital property. *See State v. Patterson*, 2004 ME 79, ¶ 13, 851 A.2d 521 ("Maine does not recognize common law mar-

---

7. For example, in *Grishman* we suggested that a wife's premarital contributions to the purchase price of the husband's nonmarital real property via a joint checking account might have created a resulting trust for her benefit. 407 A.2d at 12 n. 7; *see* Levy, *Maine Family Law* § 7.5[2] at 7–27 (2010 ed.) ("Such an interest [a resulting trust] would constitute nonmarital property to be set apart to the wife."). It is possible that other equitable theories not addressed in our decisions might also apply.

riage."); *Grishman*, 407 A.2d at 11–12 (same); Levy, *Maine Family Law* § 7.5[2] at 7–27 to 7–28 & n.124. Renée's failure to assert and prove equitable claims to any of the five properties, absent proof of the value of any claimed marital component, required the court to set the properties apart to Alfred as his nonmarital property.

[¶ 22] In sum then, notwithstanding the parties' long premarital relationship, on the facts presented to the court, and absent proof of a marital component of value, the separate ownership of the real properties is decreed by Maine law, and the court's division and distribution of the real property conflicts with the statutory requirement that the court set apart to each party his or her nonmarital property. *See* 19–A M.R.S. § 953(1).

### 3. Marital Interests

[¶ 23] The fact that both parties met their initial burden to establish that they held nonmarital real property at the time of their marriage does not end our inquiry, because nonmarital property may acquire a marital property component of value in several ways. For example, in the case of real estate, if one spouse transfers the title to nonmarital property into joint tenancy then a presumption arises that the parcel is marital property. *Spooner v. Spooner*, 2004 ME 69, ¶ 18, 850 A.2d 354. Beyond the question of title, if during the marriage real property is partially acquired or its value is increased due to the investment of marital funds, property, or labor, then the portion acquired or the amount of the increase is presumptively marital property,[8] and the burden of proof shifts to the party asserting that the parcel remains nonmarital property to prove that assertion by a preponderance of the evidence. 19–A M.R.S. § 953(2)(E)(2)(a), (b), (3); M.R. Evid. 301(a); *see Williams*, 645 A.2d at 1120; Levy, *Maine Family Law* § 7.4 at 7–20 to 7–22.

[¶ 24] The trial court found that, following the marriage, both Alfred and Renée "invested significant marital funds and marital labor" in all six properties. That finding gives rise to a presumption that any increase in value created by those investments, once proved by the party asserting it, is marital property subject to division by the court. 19–A M.R.S. § 953(2)(E)(2)(a), (b), (3). The difficulty faced by the court here was that, again, in the absence of any evidence of the properties' values at the time of the marriage, it could not determine that those values actually increased during the marriage without resorting to bare speculation.

[¶ 25] The amount of the increase in value is an essential element of the proof. It is not sufficient for a party to merely opine that a property is more useful, efficient, accessible, secure, or aesthetically pleasing due to post-marital investments of effort or funds. Such bare-bones evidence deprives the court of a critical element in the analysis. Although a court has discretion to accept or reject proffered evidence of value, it cannot arbi-

8. For example, we have held that "[i]n situations where a spouse obtains title to real property before the marriage, but mortgage payments are made during the marriage, the property will include both marital and nonmarital components." *Williams v. Williams*, 645 A.2d 1118, 1120 (Me.1994). In such a case, a trial court must apply the "source of funds" rule in order to quantify the two components of value. *See Coppola v. Coppola*, 2007 ME 147, ¶ 19, 938 A.2d 786; *Knowles v. Knowles*, 588 A.2d 315, 317 (Me.1991) ("The source of funds rule ... states that the marital estate is entitled to that portion of the increase in value of separate property that is attributable to marital effort."); Levy, *Maine Family Law* §§ 7.4 at 7–20, 7.5[3][c] at 7–30.

trarily establish values in the absence of evidence unless it is appropriate for the court to take judicial notice of certain facts; nor can it arbitrarily set aside non-marital property or divide marital property based on its finding of a marital component of value without making supportable findings of fact quantifying that value.

[¶ 26] Because there was insufficient evidence of value available "to provide the court with a meaningful basis to undertake the analysis required by 19–A M.R.S. § 953(1)," the court was required to consider the applicable burden of proof at that point in the analysis and resolve the issue it faced against the party with the burden.[9] *Ayotte*, 2009 ME 20, ¶ 7, 966 A.2d 883. The burden of proof "initially falls on the party asserting that the property is marital to prove that an appreciation in the value of nonmarital property occurred during the marriage." *Hedges v. Pitcher*, 2008 ME 55, ¶ 15, 942 A.2d 1217. Here, neither party met his or her burden of showing an appreciation in the value of nonmarital real property during the marriage. As a result, for each of the properties the presumption of a marital component of value did not arise, and the evidence did not support a division of the properties based in part on a finding that the value of each property had a marital component.

## B. Spousal Support Award

[¶ 27] Alfred contends that the court abused its discretion in awarding Renée general spousal support of $2500 per month until the death of either of them or her remarriage. *See Theberge*, 2010

ME 132, ¶ 24, 9 A.3d 809 (stating that an award of spousal support is reviewed for an abuse of discretion). In its judgment, the court indicated that it actually awarded *lower* spousal support than it otherwise would have because of the way it allocated the real property. In addition, the court found that Renée's earnings allowed Alfred to use his separate earnings to purchase some of the nonmarital property, that Alfred actively discouraged Renée from saving for her own retirement, and that Alfred used marital funds to pay $170,000 in restitution owed as a result of his personal criminal culpability.

[¶ 28] The trial court explicitly acknowledged the uncertainty created by the inadequacy of the trial record and attempted to address the dissolution of the parties' marriage in a way that reflected the long-term context of their relationship. However, as noted previously, the court could not, on this record, divide the nonmarital properties on the basis of an unspecified equitable claim or after finding that the properties had unquantifiable marital components. Notwithstanding that restriction, the court had considerable authority to order spousal support in a manner that reflected the parties' contributions to the marriage, and to provide for reimbursement as appropriate. Here, although the decision of the trial court suggests that it may have intended that the property distribution address these issues in some fashion, we are unable to ascertain the court's intent sufficiently to allow for effective appellate review. Accordingly, we remand this matter to the trial court for clarification, and possible reconsideration, of its analysis and awards.

9. As an alternative to resolving a case by applying burdens of proof in instances where parties have failed to offer evidence necessary for the court's analysis, the trial court has the discretion before a final judgment is entered to reopen the hearing and allow, or even require, such evidence. However, this discretion is vested wholly with the court, and a court is not obligated to reopen proceedings simply because a party has failed to produce necessary evidence. *See Degenhardt v. EWE Ltd. P'ship*, 2011 ME 23, ¶ 6 n. 3, 13 A.3d 790.

[¶ 29]  On remand the court may reconsider its entire judgment, including its award of spousal support.  *See Ayotte,* 2009 ME 20, ¶ 6, 966 A.2d 883 (stating that a court may "consider the value of the parties' respective non-marital assets in determining a just division of the parties' marital property").  The court is not limited on remand to the types of spousal support awarded in its initial judgment.  Spousal support, including lump sum reimbursement support as a consequence of Alfred paying restitution resulting from his criminal conviction from marital funds, may be awarded pursuant to 19–A M.R.S. § 951–A(2) (2011) if justified by the evidence.  Furthermore, if it deems it necessary, the court is empowered to impose a lien on the nonmarital property set aside to Alfred to ensure compliance with its spousal support award to Renée.  19–A M.R.S. § 951–A(7) (2011); *Booth v. Booth,* 640 A.2d 1063, 1065 (Me.1994) ("With respect to real property within Maine, a Maine divorce court has the authority to impose a lien to enforce the remedies granted pursuant to a divorce judgment.").

The entry is:

Remanded to the trial court for clarification of its analysis and conclusions and for reconsideration as deemed necessary by the trial court.  Issuance of further findings, orders, or amended judgments by the trial court shall be deemed final judgments and not subject to further review by the Law Court unless a new appeal is commenced by a party.