MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 97
Docket:        Ken-14-286
Argued:        May 12, 2015
Decided:       July 30, 2015

Panel:         MEAD, GORMAN, JABAR, and HJELM, JJ.

CHRISTINE V. VIOLETTE

v.

RANDY R. VIOLETTE

MEAD, J.

[¶1]  Christine V. Violette appeals from a judgment of divorce entered in the District Court (Waterville, *Dow, J.*).  Christine contends that the court (1) clearly erred in its calculation of Randy R. Violette's income; (2) abused its discretion in its spousal support award; (3) clearly erred in finding that two assets, a piece of real estate and a business, were nonmarital; and (4) violated her fundamental right to parent her children when it ordered the parties to discipline their children in a specific fashion upon the occurrence of particular events.  We vacate the portion of the judgment that mandates specific disciplinary measures and affirm in all other respects.

I.  CASE HISTORY

[¶2]  Christine and Randy were married on October 2, 1993, in Lewiston. They have three children together: a seventeen-year-old son, a thirteen-year-old

2

son, and a ten-year-old daughter. Christine filed a complaint for divorce on November 9, 2012. At the final hearing on December 12, 2013, the court heard evidence of the following facts relevant to this appeal.

[¶3] Separately or together, the parties own a total of six parcels of real estate. All but one are encumbered by various debts. Only one parcel, located in Sidney, is at issue on appeal. Prior to the parties' marriage, Randy purchased the parcel in Sidney and built a building there, which he rents to his own business, Power Equipment Plus. Subsequent to the parties' marriage, a storage building was added to the Sidney parcel. The parties did not dispute that the property currently has a value of $313,900, is encumbered by debts of $106,725 and $869, and has a net value of $206,306. Christine offered and the court accepted a table that states that on October 30, 2012, the Sidney property had two debts: "$130,000 as of [February 18, 1993]" and "$55,000 SBA mort" dated June 6, 1998. Randy testified that the debts on the property are for nonpayment of taxes and one or more loans. Christine did not testify or otherwise offer evidence explaining the notations in her table regarding the debts.

[¶4] Power Equipment Plus is a Subchapter S Corporation, incorporated before the marriage, and Randy owns 100 percent of the shares. During their marriage, Randy and Christine worked together at the business. Each drew salaries from the corporation. Randy testified that the current value of Power Equipment

Plus is "no value," and he introduced evidence that the business's debts outweigh its assets and that the company was taking a loss in recent years. Christine testified that, at an unspecified time ("when the market wasn't as good"), the couple began using their home equity line of credit to support the business, first testifying that the loan was used "strictly" for the business and then testifying that "half" of it was used for the business. Power Equipment Plus, in turn, made payments on the home equity loan. However, Christine did not testify to or offer evidence regarding the alleged business practices or intermingling of personal and business funds that would allow the court to make findings regarding specific monetary amounts involved. Christine also testified that the business takes in more money than the books reflect, but she offered no specific amounts or methodology that would allow the court to impute additional income to the business.

[¶5] During the marriage, Randy borrowed over $200,000 from his parents. One loan—for $100,000—was used to pay off a debt that was incurred by Randy prior to the marriage as part of the Power Equipment Plus start-up process. The remainder of the loan proceeds was used to support the family's lifestyle.

[¶6] Neither party offered an expert witness on the complex financial issues at stake in the dissolution of their marriage.[1]

---

[1] The court ordered the parties to have all of their property appraised or evaluated, and it ordered them to borrow against their parcels of real estate if necessary to pay for the appraisals or evaluations. Randy

4

[¶7]    Randy testified and produced evidence that his income is approximately $50,000 per year based on his salary at Power Equipment Plus and some rental income he makes from the Sidney property and others.  Christine testified that Randy makes more than $50,000 per year because he makes some unreported income through his business.  She also asked the court to consider an earlier case management order in the divorce action that ordered Randy to pay expenses totaling more than $50,000 per year.

[¶8]  When they were first married and the business was just getting started, Christine worked a separate full-time job and helped at Power Equipment Plus in the evenings.  For years before their separation, however, the parties drew equal annual salaries of $29,824.60 from their jobs at the business and, in addition, they paid the majority of their household expenses through the business, including clothing, utilities, tuition for private school, car expenses, health insurance, and medical bills.  Christine has Adult Stills Disease, which does not affect her ability to work, but does cause her to incur expenses of $200 per month for medication and $350 to $400 per month for health insurance under the Affordable Care Act.  Christine has a bachelor's degree in marketing information systems and is currently enrolled in a master's program at Thomas College, which will take her

---

testified that he was not able to get a loan on any of the parcels, nor was he able to afford to pay for any assessments himself.

about two years to complete, and during which time she probably will be unable to work except during summer breaks. She was not employed during the year preceding the final hearing on December 12, 2013.

[¶9] The court heard extensive testimony about the family's dynamics from the guardian ad litem appointed to the case. The parties have very different parenting styles, each with strengths and weaknesses. The guardian ad litem testified that, while Randy can be overly harsh and blunt with the children, Christine does not have "discipline standards where she can set a course of action and [have] the children follow it." Randy and the eldest child are estranged, and the child expressed to the guardian ad litem a preference to never have visits with Randy. The transfers of the two younger children from Christine to Randy for visitation have been difficult, and on one occasion Christine called the Falmouth Police Department for assistance because she was unable to compel the children to get out of her car for a visit. The guardian ad litem testified that the parties would need a "tight," detailed order.

[¶10] The court entered a divorce judgment on May 21, 2014, granting the parties a divorce on the grounds of irreconcilable marital differences. The court ordered Randy to pay to Christine transitional spousal support in the amount of $300 per week for 156 weeks, based on its findings that the parties were married for nineteen years, one month, and seven days before the complaint was filed;

6

Randy is forty-eight years old and Christine is forty-five years old; Christine "holds a bachelor's degree in the business field"; she "intends to complete a master's degree at Thomas College"; she will be required to obtain health insurance after the divorce; she and Randy lived beyond their means during their marriage and after their separation; and "Christine contributed to the family substantially as a parent and homemaker" but "has the ability to become self-supporting within three years by reducing her expenses, furthering her education, and looking hard for work." The court also ordered Randy to pay to Christine child support in the amount of $275 per week for the three children. In its attached and incorporated child support worksheet, the court listed Randy's annual gross income as $50,000, and Christine's as $15,600. The court ordered that Christine could claim all three children as her dependents for tax purposes.

[¶11] In its division of property, the court found that the real estate in Sidney is Randy's nonmarital property, and set it aside to him. In a table attached to the judgment and incorporated therein, the property was listed as having a value of $313,900 and debts of $106,725 and $869, with a net value of $206,306. Further, the court found that Power Equipment Plus is Randy's nonmarital property and set it aside to him. In the table, Power Equipment Plus was recorded as a "business interest" with a value of "0." The court set aside the marital home to Christine, subject to the property's $98,512 home equity loan.

[¶12]  In its order of parental rights and responsibilities, the court found that, although separately the parties are "strong parents," the parties "are unable to effectively share parental rights at this time" due to the "unusual degree of conflict and strife between [the parties]."  The court declined to "enter a special 'no-contact' schedule for [the oldest child and Randy]," finding that it was not in the child's or his siblings' best interests "to allow him to simply opt out of the family."  The court ordered:

> When any of the children are scheduled to be with a parent and they refuse to be with that parent, the other parent shall require the refusing child to stay in his or her bedroom, and they may not have access to the Internet, telephone, text messaging, television, or video games during such time.  Neither party shall dramatize the imposition of this consequence of a child's choice.

The court granted Christine primary residence of all three children, ordered the parties to attend a high-conflict parenting course, and set out a detailed allocation of parental rights and responsibilities and a visitation schedule.

[¶13]  Subsequently, Christine filed a motion for further findings of fact and conclusions of law, *see* M.R. Civ. P. 52(b), requesting further findings to support the court's spousal support award, its determination of Randy's income, and its "overall distribution of marital property."  On August 5, 2014, the court entered an order making additional findings.  The court stated that the judgment contained adequate findings to support its spousal support order and that it had also

8

considered in its award the fact that Christine would have the right to claim the children on her tax returns. Regarding Randy's income, the court stated that Randy "provided evidence that his income will be $50,000 per year" and stated that Christine's evidence was insufficient for the court to conclude that Randy's income would be higher. Regarding the property division, the court stated that the judgment contained adequate findings and that the distribution was just given that the parties were in a difficult financial situation and the court had "exercise[d] its discretion to distribute the difficulty fairly." Christine appeals. *See* M.R. App. P. 2(b)(1), (3); 14 M.R.S. § 1901(1) (2014).

## II. LEGAL ANALYSIS

### A. Randy's Income

[¶14] Christine argues that the court clearly erred in finding that Randy's gross income would be $50,000 per year when "[t]he most competent evidence on the record was not Randy's" evidence but hers. She argues that the court abused its discretion in its child support and spousal support awards by basing them on the erroneous finding.

[¶15] We review factual findings for clear error, which exists only if "there is no competent evidence in the record to support" the finding, the finding "is based on a clear misapprehension by the trial court of the meaning of the evidence," or if "the force and effect of the evidence, taken as a total entity,

rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case." *In re A.M.*, 2012 ME 118, ¶ 29, 55 A.3d 463 (quotation marks omitted). "Factual findings should not be overturned in an appellate proceeding simply because an alternative finding also finds support in the evidence. We defer to the trial court's determination of witnesses' credibility and its resolution of conflicts in testimony." *Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221 (citation omitted) (quotation marks omitted).

[¶16] Although Christine testified that Randy's income is higher than $50,000 because his business takes in more money than he reports and because a case management order by the court ordered him to pay expenses totaling more than $50,000 per year, the court heard Randy testify that his income will be $50,000, and it is the trial court's province to make credibility determinations between competing evidence. *See id.* Further, there is no indication that the court misapprehended the evidence before it, nor does the record persuade us to a certainty that the finding "does not represent the truth and right of the case." *See In re A.M.*, 2012 ME 118, ¶ 29, 55 A.3d 463. Therefore, the court did not clearly err by finding that Randy's gross income was $50,000 per year, and did not abuse its discretion by relying on that finding in its child support and spousal support awards.

10

B.    Spousal Support

[¶17]  Christine contends that the court abused its discretion in awarding the spousal support that it did, arguing that it should have awarded a greater amount of support for a longer term.

[¶18]  We review an award of spousal support for an abuse of discretion. *Miliano v. Miliano*, 2012 ME 100, ¶ 27, 50 A.3d 534.  In a divorce action, a court may, but is not required to, make an award of spousal support.  *See* 19-A M.R.S. § 951-A(2) (2014).  A court may award transitional spousal support "to provide for a spouse's transitional needs, including, but not limited to: (1) [s]hort-term needs resulting from financial dislocations associated with the dissolution of the marriage; or (2) [r]eentry or advancement in the work force, including, but not limited to, physical or emotional rehabilitation services, vocational training and education." 19-A M.R.S. § 951-A(2)(B).  In making an award of spousal support, the court must consider a number of factors enumerated by statute.  *See* 19-A M.R.S. § 951-A(5) (2014).

[¶19]  Contrary to Christine's contentions, the court did not abuse its discretion by awarding transitional spousal support in the amount of $300 per week for 156 weeks.  The court's findings reflect the factors it is required to consider, *see* 19-A M.R.S. § 951-A(5)(A), (C)-(G), (I), (K), (N)-(O), (P)(2), and its findings

were supported by competent evidence in the record, *see In re A.M.*, 2012 ME 118, ¶ 29, 55 A.3d 463.

C.    Property

[¶20]  Christine argues that the court clearly erred by finding that the Sidney real estate and Power Equipment Plus were Randy's nonmarital property.

[¶21]    "We review a court's classification of property as marital or nonmarital for clear error."  *Miliano*, 2012 ME 100, ¶ 15, 50 A.3d 534.  In dividing property in a divorce action, a court must first determine what property is marital and what property is nonmarital, then set apart each party's nonmarital property, and finally divide the marital property as it deems just.  19-A M.R.S. § 953(1) (2014); *Miliano*, 2012 ME 100, ¶ 14, 50 A.3d 534.  Once a party makes a showing that property was acquired before the marriage, absent evidence of a marital component, the court is required to set the property aside as nonmarital.  *Miliano*, 2012 ME 100, ¶ 16, 50 A.3d 534.  However, if the other party shows that the property has a marital component in a determinable amount, the burden shifts back to the spouse claiming the property is nonmarital to show "what portion of the property [is] nonmarital."  *Williams v. Williams*, 645 A.2d 1118, 1120 (Me. 1994); *Miliano*, 2012 ME 100, ¶ 23, 50 A.3d 534.

12

1.    Sidney Real Estate

[¶22]   Christine argues that the court clearly erred when it found that the Sidney property was wholly nonmarital.  She argues that the value of the marital component of the property is equal to the amount by which the mortgage was decreased during the marriage.

[¶23]   When "a spouse obtains title to real property before the marriage, but mortgage payments are made during the marriage, the property will include both marital and nonmarital components."  *Coppola v. Coppola*, 2007 ME 147, ¶ 20, 938 A.2d 786 (quotation marks omitted); *see also Williams*, 645 A.2d at 1120 (reasoning that property is acquired as it is paid for).

[¶24]   In this case, Randy undoubtedly met his burden of showing that he purchased the Sidney property prior to the marriage.  The burden then shifted to Christine to show a marital component, which she contends on appeal is the portion of the property acquired during marriage via mortgage payments.  Christine offered only a table, prepared by her, indicating that two debts on the property were reduced during the marriage.  The information contained in the table was never admitted as substantive evidence either through testimony or a duly admitted exhibit.  Because Christine failed to put forth evidence that would allow the court to find a specific amount of marital interest in an otherwise nonmarital asset, she has failed to meet her burden of proof, and the court did not clearly err in

finding that the Sidney property was wholly nonmarital. *See Miliano*, 2012 ME 100, ¶ 13, 50 A.3d 534 (noting that, when a court is presented with insufficient evidence to meaningfully undertake the analysis required by section 953(1), "the issue should be resolved against the party with the burden of proof" (quotation marks omitted)).

2.    Power Equipment Plus

[¶25]  Christine argues that the court clearly erred when it found that Power Equipment Plus was an entirely nonmarital asset because, she alleges, (1) the company increased in value during the marriage, and (2) marital debts were incurred to support the business.

[¶26]  An increase in value of nonmarital property is marital if it resulted "from the investment of marital funds . . . in the nonmarital property[,] . . . from marital labor[,] . . . [or] from reinvested income and capital gain if either or both spouses had a substantial active role during the marriage in managing, preserving or improving the property."   19-A M.R.S. § 953(2)(E) (2014).   In addition, property has marital and nonmarital components if both marital and nonmarital funds were invested in it.  *Hedges v. Pitcher*, 2008 ME 55, ¶ 8, 942 A.2d 1217 ("Employing this approach, known as the 'source of funds' rule, we regard[] acquisition as an ongoing process through which some marital and some

14

nonmarital funds might be invested in certain property, thereby rendering property partially marital and partially nonmarital.").

[¶27] Again turning to the shifting burdens, Randy has met his burden of showing that he acquired Power Equipment Plus prior to the marriage by incorporating it and owning all of the stock before he and Christine married. The burden then shifted to Christine to show that some portion of this otherwise nonmarital property is marital. The first way she sought to meet her burden was by attempting to prove that the asset had increased in value over the course of the marriage. However, Christine offered no evidence of the value of Power Equipment Plus before or at the start of the marriage. Further, as to Power Equipment Plus's current value, the court's finding that the asset is worth $0 is supported by record evidence that the business's debts outweigh its assets, as well as evidence that Power Equipment Plus was losing money in recent years. *See Peters v. Peters*, 1997 ME 134, ¶ 15 & n.5, 697 A.2d 1254 (concluding that the record supported the trial court's finding that a party's share in a corporation had no value when the corporation's liabilities exceeded its assets).

[¶28] The second way that Christine sought to meet her burden was to show that the parties invested marital funds in the asset. Christine testified to no specific details regarding the money invested in the business from the home equity line of credit, and the only evidence the court heard regarding the $100,000 loan Randy

borrowed from his family was that he used it to pay off a premarital debt he owed to his uncle. Therefore, Christine offered no competent evidence that would permit the court to find that a quantifiable amount of marital funds was invested in Power Equipment Plus, and thus the court did not clearly err by finding that the asset was wholly nonmarital. *See Miliano*, 2012 ME 100, ¶ 13, 50 A.3d 534.

D. Parental Discipline

[¶29] Finally, Christine contends that the court violated her fundamental right to parent her children when it ordered the parties to discipline their children if and when they refuse to visit with one of their parents. *See Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). However, we need not reach this constitutional question because we conclude that the court's attempt to fashion a creative solution to this challenge exceeded the bounds of the court's discretion in this portion of its judgment.

[¶30] Trial courts issue parental rights and responsibilities orders pursuant to 19-A M.R.S. § 1653 (2014). We review an award of parental rights and responsibilities for an abuse of discretion. *Grant v. Hamm*, 2012 ME 79, ¶ 6, 48 A.3d 789. Our review of a court's exercise of discretion requires us to consider

> (1) whether factual findings, if any, are supported by the record pursuant to the clear error standard; (2) whether the court understood the law applicable to its exercise of discretion; and (3) given the facts and applying the law, whether the court weighed the applicable facts and made choices within the bounds of reasonableness.

*Charette v. Charette*, 2013 ME 4, ¶ 7, 60 A.3d 1264 (alterations omitted) (quotation marks omitted).

[¶31]  Here, under the third prong of the abuse of discretion test, it cannot be said that the court made choices within the bounds of reasonableness when it ordered the parties to discipline their children in such a very specific and inflexible fashion upon the occurrence of particular future events with no discretion left to the parents in this case.  Although we acknowledge the challenging nature of the problem the court was attempting to address, we must conclude that the court's rigid order of isolation constitutes an abuse of discretion that we now vacate.  In all other respects, the judgment is affirmed.

The entry is:

> The portion of the judgment that orders the parties to discipline their children is vacated.  In all other respects, the judgment is affirmed.

**On the briefs and at oral argument:**

Elizabeth J. Scheffee, Esq., Givertz, Scheffee & Lavoie, PA, Portland, for appellant Christine V. Violette

Kenneth P. Altshuler, Esq., Childs, Rundlett, Fifield & Altshuler, LLC, Portland, for appellee Randy R. Violette