MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2022 ME 43
Docket:        Wal-21-309
Argued:        April 6, 2022
Decided:       August 9, 2022

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, and CONNORS, JJ.*

PATRICK R. MORAN

v.

WHITNEY D. MORAN

CONNORS, J.

[¶1]  Whitney D. Moran appeals from a divorce judgment entered by the District Court (Belfast, *Walker, J.*) on Patrick R. Moran's complaint.  Whitney contends that the trial court erred or abused its discretion in its classification of the parties' retirement accounts and its denial of her request for attorney fees.[1]  We vacate the judgment in part and remand for further proceedings.

---

* Although Justice Humphrey participated in the appeal, he retired before this opinion was certified.

[1] Whitney also argues that the trial court erred by assigning a value of $8,500 to the parties' real property.  Because the trial court's finding is supported by competent evidence in the record, we discern no error.  *See Berntsen v. Berntsen*, 2017 ME 111, ¶¶ 13-14, 163 A.3d 820; *Theberge v. Theberge*, 2010 ME 132, ¶¶ 17-18, 9 A.3d 809; *Peters v. Peters*, 1997 ME 134, ¶¶ 13-14, 697 A.2d 1254.

## I. BACKGROUND

[¶2] The record supports the following facts. Patrick and Whitney were married in August 2017, and they have one child who was born in January 2019. In June 2019, Patrick filed a complaint for divorce. Whitney answered and counterclaimed.

[¶3] Two years later, the court held a two-day trial. The parties testified about their decision in February 2019 to begin living apart. They both testified that Patrick had emotionally withdrawn from the marriage during Whitney's pregnancy and that, approximately two weeks after their child was born, Whitney went to California with the child to receive support from her family. Before Whitney and the child left, Patrick and Whitney signed a short statement entitled "Informal Marriage Agreement" in which they stated that they were neither legally separating nor terminating their marriage.

[¶4] The parties also testified about their decision in June 2019 to legally end their marriage. Whitney testified that, after several months "without answers," she filed a petition for legal separation on May 31, 2019, in California. A few days later, Whitney returned to Maine with the parties' child for a visit. During the visit, after learning that Patrick had been having an affair, Whitney

had Patrick served with a copy of the petition.  Patrick then filed for divorce in Maine.

[¶5]  The parties also testified about their income and retirement accounts, and the court admitted numerous financial documents.  Patrick testified that he has worked for Versant Power—formerly Emera Maine—since 2014.  In 2020, he earned $103,176.64.  Patrick further testified that he has three retirement accounts: (1) a Vanguard brokerage account, (2) a Vanguard Roth IRA, and (3) a Versant Power 401(k) account.  Because the parties had a "short marriage," Patrick suggested that the court determine the marital portion of his retirement accounts using the values of the accounts on the "date of separation" rather than at the time of the hearing.  He offered several exhibits to establish the balances of his retirement accounts on various "milestone" dates, including the date of the marriage, the "date of separation," the date of the judicial settlement conference, and the date of the divorce hearing.  Some of the exhibits used a "date of separation" in February 2019, while other exhibits used a "date of separation" in June 2019.  At the time of the trial, Patrick's retirement accounts had a combined value of $357,063.50.

[¶6]  Whitney testified that she currently works as a special education teacher in California and that she had worked as a special education teacher

when she lived in Maine. In 2020, she earned approximately $28,000. Whitney further testified that she has four retirement accounts: a MainePERS account, a CalSTRS account, a Vanguard brokerage account, and a Vanguard Roth IRA. Regarding her MainePERS account, Whitney testified that the account was valued at $4,739.25 at the time of the marriage and $10,689.76 as of April 2021. Regarding her CalSTRS account, Whitney testified that the account was valued at $3,018.66 as of January 2021. Two weeks before trial, Whitney submitted an updated financial statement in which she indicated that her Vanguard brokerage account and Vanguard Roth IRA had a combined value of $15,773.67 and that the accounts had both marital and nonmarital components. At trial, Whitney testified that her Vanguard accounts had a combined balance of $3,817.41 at the time of the marriage and that they had a current balance of $16,031.48. To support her testimony, Whitney offered account statements, which the court admitted. According to this evidence, Whitney's retirement accounts had a total value of $29,739.90.

[¶7]  Whitney requested that Patrick pay $12,987.20 toward her attorney fees and submitted an affidavit showing that she had incurred that amount, excluding fees incurred for the two days of trial.[2]

[¶8]  On August 4, 2021, the court entered a judgment of divorce and denied Whitney's request for attorney fees.[3]  Although the court did not expressly find that the parties had legally separated, the court relied on the "date of separation"[4] to determine the marital and nonmarital components of Patrick's retirement accounts.  For Patrick's 401(k) account, the court found that it was valued at $32,847.21 on the date of the marriage and $78,407.24 on the "date of separation."  The court determined that the increase in value from the date of the marriage to the "date of separation" was marital property and divided it evenly between the parties.  For Patrick's Vanguard accounts, the

---

[2]  Whitney's attorney fee affidavit also did not include—and she did not seek—attorney fees that she had incurred in California.

[3]  A table showing a distribution of the parties' retirement accounts and real property appears in the trial court file and was included in the appendix.  *See, e.g.*, *Carter v. Carter*, 2006 ME 68, ¶ 8 & n.4, 900 A.2d 200.  The origin of the table is not apparent from either the judgment or the table itself, but the parties agreed at oral argument that the trial court created the table and that the table forms part of the judgment.  The best practice for a trial court including an attachment with a judgment is to expressly incorporate the attachment into the judgment by reference.

[4]  The trial court did not identify the date on which it found that the parties had separated.  Based on the record, it appears that the trial court used a "date of separation" of June 2019 for Patrick's 401(k) account but used a "date of separation" of February 2019 for Patrick's Vanguard accounts.  The trial court did not use any "date of separation" to determine the character or values of Whitney's accounts.

6

court found that they had a combined value of $88,570.86 on the date of the marriage and $137,845.00 on the "date of separation." The court further found that Patrick had made a "nonmarital gift" of $25,000 during the marriage that had contributed to the increase in the Vanguard accounts' combined value.[5] After setting aside $113,570.86 to Patrick as his nonmarital property, the court found that the remaining $24,274.14 was marital property and divided it evenly between the parties.

[¶9] Regarding Whitney's retirement accounts, the court found that her MainePERS account was entirely marital and that her CalSTRS account was entirely nonmarital. The court awarded both accounts to Whitney. The court further awarded to Whitney her Vanguard brokerage account and Vanguard Roth IRA, which the court found were entirely marital property and were valued at $15,773.67 and $12,214.07, respectively.

[¶10] Whitney timely filed a motion for further findings of fact and conclusions of law with an incorporated motion to alter or amend the judgment. *See* M.R. Civ. P. 52(b), 59(e). She also renewed her request for attorney fees,

---

[5] At trial, Whitney argued that Patrick's $25,000 contribution was marital property because the bank account from which he made the transfer contained comingled marital and nonmarital funds. She does not challenge the court's finding on appeal.

seeking an award of $5,000. The court denied Whitney's motions, and she timely appealed.

## II. DISCUSSION

### A. Classification of the Parties' Retirement Accounts

[¶11] Whitney argues that the trial court erred in its classification of the parties' retirement accounts by relying on the parties' de facto separation to characterize portions of Patrick's accounts as nonmarital and by not setting aside the nonmarital portions of her accounts as required by statute. She further argues that the trial court erred by awarding her an account that does not exist. "A court's determination that a retirement benefit or account, or a part thereof, is marital or nonmarital property is reviewed for clear error." *Bojarski v. Bojarski*, 2012 ME 56, ¶ 15, 41 A.3d 544. "However, we review the application of the law to the facts de novo." *Id.* "Although we ordinarily assume that a trial court found all the facts necessary to support its judgment, when, as here, a motion for findings has been filed and denied, we cannot infer findings from the evidence in the record." *Mooar v. Greenleaf*, 2018 ME 23, ¶ 7, 179 A.3d 307 (quotation marks omitted). "We confine our review to the court's explicit findings and determine whether those findings are supported by the record." *Sulikowski v. Sulikowski*, 2019 ME 143, ¶ 11, 216 A.3d 893.

## 1. The delineation of Whitney's public employment retirement accounts as marital or nonmarital property must be calculated pursuant to the three-step process for division of property in a divorce matter.

[¶12]  "We have long recognized a three-step process for distributing property in a divorce." *Laqualia v. Laqualia*, 2011 ME 114, ¶ 13, 30 A.3d 838; *see* 19-A M.R.S. § 953 (2021).[6]  "The trial court must first distinguish marital from nonmarital property.  Then, the court must set apart nonmarital property.  Finally, the court must divide marital property in such proportion as the court deems just." *Laqualia*, 2011 ME 114, ¶ 13, 30 A.3d 838 (citations and quotation marks omitted).

[¶13]  "The trial court has no discretion in the allocation of the nonmarital property; it must be transferred to the spouse to whom it belongs." *Id.* ¶ 15 (quotation marks omitted).  When a party in a divorce action has a retirement account that accrued both before and during the marriage, the trial court should first determine the present value of the account.  *See Skibinski v. Skibinski*, 2009 ME 13, ¶ 7, 964 A.2d 641.  It should then determine the value of

---

[6]  Title 19-A M.R.S. § 953 has been amended twice since the divorce judgment was entered.  *See* P.L. 2021, ch. 122, § 3 (effective Oct. 18, 2021) (codified at 19-A M.R.S. § 953(1)(B)-(D) (2022)); P.L. 2021, ch. 285, § 1 (effective Oct. 18, 2021) (codified at 19-A M.R.S. § 953(10) (2022)).  Although the amendments do not affect our analysis, we nevertheless cite the statute that was in effect when the judgment was entered.

the nonmarital portion that is to be set aside and determine the value of the marital portion that is subject to division.  *See id.*

[¶14]  Title 19-A M.R.S. § 953(2) broadly defines "marital property" as "all property acquired by either spouse subsequent to the marriage." "Nonmarital property" includes property that falls into the statutorily enumerated exceptions to "marital property," *see id.* § 953(2)(A)-(E), and property acquired by either spouse before the marriage, *see Miliano v. Miliano*, 2012 ME 100, ¶ 16, 50 A.3d 534; *Long v. Long*, 1997 ME 171, ¶ 9, 697 A.2d 1317.

[¶15]  Here, Whitney testified that her MainePERS account had a balance of $4,739.25 at the time of the marriage and a balance of $10,689.76 near the time of trial.  Whitney further testified that her CalSTRS account had a balance of $3,018.66 as of January 2021.  Although the court correctly determined the present value of Whitney's MainePERS account, the court erred by not setting aside to Whitney as her nonmarital property the $4,739.25 that was in the account before the marriage.  *See* 19-A M.R.S. § 953(1)-(2); *Miliano*, 2012 ME 100, ¶ 16, 50 A.3d 534.  Similarly, the court correctly determined the present value of Whitney's CalSTRS account, but the court's determination that the account was wholly nonmarital is not supported by the record because the undisputed evidence shows that the account was established during the

marriage. *See* 19-A M.R.S. § 953(1)-(2); *Miliano*, 2012 ME 100, ¶ 16, 50 A.3d 534.

[¶16] Patrick concedes that the trial court's findings are erroneous but argues that—at least to some extent—the errors are harmless because the trial court awarded to Whitney all retirement accounts in her name. Patrick contends that the court does not have to "do math with surgical precision" and that "[r]ough mathematical justice is sufficient." Because we cannot say that it is highly probable that the trial court's division of marital property was not affected by its erroneous findings, the errors are not harmless. *See Marston v. Marston*, 2016 ME 87, ¶ 9, 141 A.3d 1106.

2.   **The relevant date for determining the marital and nonmarital portions of Patrick's retirement accounts is not the date of the parties' de facto separation but rather the date of the entry of the divorce judgment.**

[¶17] As mentioned above, "nonmarital property" refers to property that falls into any one of the exceptions to "marital property" listed in section 953(2)(A)-(E). One such exception is "[p]roperty acquired by a spouse after a decree of legal separation." 19-A M.R.S. § 953(2)(C). Separation decrees are governed by 19-A M.R.S. § 851 (2022). "[O]nce a decree of separation has been entered, all marital property distributed to each spouse by decree and all property newly acquired by each spouse after the decree will thereafter be

treated as nonmarital property pursuant to subsection 953(2)(C) if the parties' marriage is subsequently dissolved through a divorce decree." Levy, *Maine Family Law* § 7.6[4][c] at 7-41 (8th ed. 2013).

[¶18] Generally, property acquired during a de facto separation, however, is marital. In *Kaye v. Kaye*, 538 A.2d 288, 289 (Me. 1988), the husband argued that the trial court had impermissibly characterized property that he had acquired by his sole effort after he and his wife had separated as marital. We disagreed and held that

> [t]he legislative definition of all property acquired after marriage and prior to "a decree of legal separation" as presumptively marital, constitutes a deliberate choice of a clear demarcation point evidenced by a formal decree. In the absence of a judicially sanctioned separation, the parties' agreement to a de facto separation does not prevent the marital presumption from attaching to subsequently acquired property.

*Id.* (examining the predecessor statute to 19-A M.R.S. § 953). Similarly, in *Doucette v. Washburn*, 2001 ME 38, ¶¶ 2-6, 766 A.2d 578, the husband argued that the trial court should have set aside to him as his nonmarital property a workers' compensation lump sum award that he received while the parties were living apart. Citing section 953(2)(C) and *Kaye*, we summarily rejected his argument, stating that it had "no merit." *Id.* ¶ 16 n.10.

[¶19]  The record is clear regarding the parties' separation.  Patrick and Whitney began living apart in February 2019 when Whitney moved to California.  At that time, they signed an agreement in which they expressly stated that they were *not* legally separating.  Whitney filed a petition for legal separation in California and had Patrick served with the paperwork in June 2019.  Patrick filed for divorce a few days later.  There is no evidence in the record that any court ever issued a decree of legal separation, and the parties do not contend that they were legally separated.

[¶20]  Although the trial court did not expressly find that the parties had legally separated, *see* 19-A M.R.S. § 953(2)(C), the trial court assigned a total value of $216,252.24 to Patrick's retirement accounts based on the "date of separation."  In doing so, the trial court implicitly found that the increase in value of Patrick's retirement accounts after the parties' de facto separation was Patrick's nonmarital property.  This erroneous finding resulted in more than $140,000 being improperly classified as Patrick's nonmarital property given the undisputed evidence showing that Patrick's retirement accounts had a balance of $357,063.50 at the time of trial.[7]

---

[7]  The trial court did not find—and the record would not have supported a finding—that the approximately $140,000 increase in the value of Patrick's retirement accounts after the parties' de facto separation was solely due to "[a]ppreciation resulting from market forces" or "[a]ppreciation

[¶21]   When a court divides the marital estate, it may consider "all relevant factors," 19-A M.R.S. § 953(1), including the duration of the marriage, *see Monahan v. Monahan*, 2015 ME 65, ¶¶ 3, 6, 116 A.3d 950; *Eaton v. Eaton*, 447 A.2d 829, 831 (Me. 1982).  The duration of the marriage is not a relevant factor, however, in determining whether property is marital or nonmarital. *See Laqualia*, 2011 ME 114, ¶ 15, 30 A.3d 838.  "The equitable considerations applicable to the just division of marital property do not apply to the setting apart of nonmarital property." *Id.* (quotation marks omitted).

3.     **The trial court erred by double counting Whitney's Vanguard retirement accounts.**

[¶22]  Whitney submitted an updated financial statement before trial in which she indicated that her Vanguard accounts had both marital and nonmarital components and a combined value of $15,773.67.  At trial, Whitney produced a current account statement showing that the balance of the accounts had increased to $16,031.48 since she submitted her updated financial statement and that the accounts had a balance of $3,817.41 at the time of the marriage—a difference of $12,214.07.  The trial court found that Whitney's Vanguard accounts were presently valued at $15,773.67 and $12,214.07 and

---

resulting from reinvested income and capital gain."  19-A M.R.S. § 953(2)(E)(1); *see Miliano v. Miliano*, 2012 ME 100, ¶¶ 13, 23, 50 A.3d 534.

that they were entirely marital. The trial court's findings are erroneous for two reasons. First, it appears that the court mistakenly double counted Whitney's Vanguard accounts, thereby awarding her an account that did not exist. Second, although competent evidence in the record supports the trial court's finding that $12,214.07 of Whitney's Vanguard accounts was marital property where the accrual occurred during the marriage using marital funds, the trial court erred by not determining the accounts' present value and by not setting aside the $3,817.41 that existed at the time of the marriage to Whitney as her nonmarital property.

[¶23] In sum, we vacate the trial court's findings regarding both parties' retirement accounts and remand to the trial court to redetermine the marital and nonmarital portions of each retirement account of each party and reassess the fairness of the division of the marital estate. *See Cole v. Cole*, 561 A.2d 1018, 1021 (Me. 1989). Although divorce actions present many challenges, particularly when complicated financial matters are involved, the challenges are not insurmountable. "By applying a clear, step-by-step analysis pursuant to statutory mandates, and allocating appropriate burdens of proof along the way, counsel and the courts can make their way through the potential legal quagmire that these cases often present." *Miliano*, 2012 ME 100, ¶ 11,

50 A.3d 534; *see also Axtell v. Axtell*, 482 A.2d 1261, 1264 (Me. 1984) ("Casting the judgment in specific amounts will make the result more comprehensible for the litigants and will facilitate appellate review . . . ." (quotation marks omitted)).

**B.    Attorney Fees**

[¶24]  Title 19-A M.R.S. § 105(1) (2022) provides that, in a divorce action, the court may order a party to pay another party's reasonable attorney fees. A decision on a request for an award of attorney fees "necessarily requires consideration of the parties' relative capacity to absorb the costs of litigation in addition to all other relevant factors that serve to create a fair and just award under the totality of the circumstances." *Riemann v. Toland*, 2022 ME 13, ¶ 42, 269 A.3d 229.  "The court must provide a concise but clear explanation of its reasons for grant or denial of the fee award." *Neri v. Heilig*, 2017 ME 146, ¶ 16, 166 A.3d 1020 (quotation marks omitted).  "We review a trial court's decision on attorney fees for an abuse of discretion." *Sulikowski*, 2019 ME 143, ¶ 20, 216 A.3d 893.

[¶25]  Because we vacate the portion of the judgment dividing the parties' marital property, we also vacate the trial court's denial of Whitney's request for attorney fees.  On remand, in determining whether to award Whitney attorney

fees, the trial court must consider the disparity in the parties' income and assets, as well as any other factors that the court deems relevant, and articulate the reason for its decision.

The entry is:

> The judgment is vacated as to the property division and attorney fees. The remainder of the judgment is affirmed. Remanded for further proceedings consistent with this opinion.

---

Kelley E. Mellenthin, Esq. (orally), Lincolnville Center, for appellant Whitney D. Moran

Scott J. Lynch, Esq. (orally), Lynch & VanDyke, P.A., Lewiston, for appellee Patrick R. Moran