MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 146
Docket:        Kno-16-435
Submitted
 on Briefs:    May 25, 2017
Decided:       July 6, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ERNEST P. NERI

v.

KIMBERLY HEILIG

JABAR, J.

[¶1]  Kimberly Heilig appeals from a judgment of the District Court (Rockland, *Mathews, J.*) divorcing her from Ernest P. Neri, dividing their assets, ordering Neri to pay $2,000 toward Heilig's attorney fees, and ordering him to pay her spousal support for three years.  On appeal, Heilig contends that the court clearly erred by finding that real estate purchased by Neri during the marriage is nonmarital property, abused its discretion in calculating her spousal support award, and abused its discretion by awarding her a lesser amount of legal fees than she requested.  We disagree and affirm.

I.  BACKGROUND

[¶2]  The court found the following facts, which are supported by competent evidence in the record.  *See Blanchard v. Blanchard*, 2016 ME 140,

2

¶ 3, 148 A.3d 277. Heilig and Neri were married on August 12, 2004. At the time of the marriage, Heilig was a grant writer and consultant for Columbia University, and Neri was a retired teacher. Neri received a monthly pension and, in 2008, began to receive social security payments. Each individually held retirement accounts. After getting married, they moved to Honduras, where they purchased two pieces of real estate and a tool business.

[¶3] At some point, the relationship soured and they separated, eventually relocating separately to Maine and selling the Honduras properties and business. Once in Maine, they partially reconciled. Neri purchased and sold a property on Oyster River Road in Warren (the "Oyster River Road" property), and then, in 2010, they purchased as joint tenants a property on Crawford Road in Warren (the "Crawford Road property"). They lived in separate quarters at the Crawford Road property until 2014, when, following a complete breakdown of the relationship, Neri purchased and relocated to a multi-unit property in Thomaston (the "Thomaston property").

[¶4] Neri purchased the Thomaston property in his own name, using money obtained from his individual retirement account through his State of Connecticut deferred compensation fund, and by obtaining a loan from

Camden National Bank.  He paid closing costs using funds from his retirement account that he had transferred to Damariscotta Bank & Trust.

[¶5]  Neri is 72 years old.  Due to several medical conditions, he has no earning capacity.   His income is $74,000 annually, received solely from retirement and social security funds.  Heilig is 67 years old and is a mediator.  Her annual income is $35,800.[1]

[¶6]  Heilig filed for judicial separation in October 2014, and Neri filed a complaint seeking divorce in December 2014.  Following a hearing in January 2015, the court (*Worth, J.*) ordered Neri to pay Heilig $1,000 per month in interim spousal support, to be applied retroactively from October 31, 2014; $2,000 in interim attorney fees; and the mortgage and homeowner's insurance payments on both the Crawford Road property and the Thomaston property.

[¶7]  Mediations in May and December 2015, and a judicial settlement conference on April 8, 2016, failed to resolve all issues between Neri and Heilig.  On May 4 and 5, 2016, a contested divorce hearing was held.  By order dated June 21, 2016, the court (*Mathews, J.*) consolidated Heilig's judicial

---

[1]  The court imputed to Heilig social security income of $17,800 annually, which she has a right to collect but has deferred.  It added that figure to the $13,000 annual income she receives from mediating.

4

separation action with the divorce action and granted the parties a divorce. The court divided their real estate, personal and intangible property, and debt; ordered Neri to pay Heilig spousal support in the amount of $1,000 per month for a period of thirty-six months; ordered Heilig to pay Neri $33,000 to equalize the marital property and debt distribution; and ordered Neri to pay $2,000 toward Heilig's attorney fees, in addition to the previously awarded attorney fees.

[¶8] Heilig filed a motion for further findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(b).[2] The court denied her motion in part and granted it in part: it corrected its previous finding concerning Neri's age, clarified its reasoning concerning personal property values and the division of several items of personal property, and amended the thirty-six-month spousal support term so as to be modifiable. *See* 19-A M.R.S. § 951-A(4) (2016). Heilig timely appealed the divorce judgment. *See* M.R. Civ. P. 2(b)(3).

## II. DISCUSSION

[¶9] Heilig raises three arguments on appeal. First, she contends that the court clearly erred by finding that the Thomaston real estate is nonmarital

---

[2] We note that Heilig's Rule 52(b) motion correctly included proposed findings of fact and conclusions of law, *see Eremita v. Marchiori*, 2016 ME 160, ¶ 3, 150 A.3d 336, but also contained more than sixty questions in the form of interrogatories, which were inappropriately addressed to the court. The court had no obligation to answer the interrogatories. *See Wandishin v. Wandishin*, 2009 ME 73, ¶¶ 20-21, 976 A.2d 949.

property and awarding it to Neri. Next, she contends that the court erred in calculating her spousal support award by awarding the support for too short a period of time and by failing to consider Neri's potential rental income from the Thomaston property. Finally, she argues that the court's order that Neri pay only $2,000 toward her attorney fees was an abuse of discretion because, according to Heilig, that sum was not reasonable in light of the funds she actually expended on legal costs. We address each argument in turn.

A.    Classification of Real Estate

[¶10]  The court's classification of property as marital or nonmarital is a question of fact, *Spooner v. Spooner*, 2004 ME 69, ¶ 7, 850 A.2d 354, and is reviewed for clear error,[3] *Young v. Young*, 2015 ME 89, ¶ 13, 120 A.3d 106. "As long as there is competent evidence in the record to support the District Court's characterization, the characterization will be affirmed." *Clum v. Graves*, 1999 ME 77, ¶ 9, 729 A.2d 900.

[¶11]   "All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually," unless a party

---

[3]  Heilig's brief correctly states that equitable distribution of marital property and debt is reviewed for an abuse of discretion, *see Thumith v. Thumith*, 2013 ME 67, ¶ 8, 70 A.3d 1232, but because the issue raised is whether or not the court properly *classified* real estate as nonmarital, we review for clear error, *see Murphy v. Murphy*, 2003 ME 17, ¶ 20, 816 A.2d 814.

demonstrates that it was "acquired in exchange for property acquired prior to the marriage," or for another statutory reason. 19-A M.R.S. § 953(2), (3) (2016).

[¶12] Here, although the Thomaston property was purchased during the marriage, the court found that it was nonmarital property belonging to Neri alone. Specifically, the court found, based on competent evidence in the record, *see Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 35, 956 A.2d 110, that Neri obtained the funds to purchase the Thomaston property from his nonmarital Connecticut retirement deferred compensation fund. Neri closed on the property using those funds and a loan secured in his own name, and made payments on all loans using his personal nonmarital retirement funds. Even where real estate is secured by a mortgage toward which payments are made during the marriage, the presumption that the property is marital may be overcome by a showing that the mortgage payments, as here, were made with nonmarital funds. *See Noyes v. Noyes*, 617 A.2d 1036, 1038 (Me. 1992); *see also Coppola v. Coppola*, 2007 ME 147, ¶ 19, 938 A.2d 786. Heilig admitted that she did not make a monetary contribution toward the purchase, construction, or maintenance costs of the Thomaston property. The court reasoned, and we agree, that based upon these facts, Neri overcame the

presumption of marital property by establishing that the Thomaston property was purchased with and supported by nonmarital funds.

B.    Spousal Support Award

[¶13]   In determining a spousal support award, a court must consider certain statutory factors.  19-A M.R.S. § 951-A(2), (5) (2016).  These factors include, inter alia, the length of the marriage, each party's ability to pay, each party's age, their employment histories, the health and disabilities of each party, their contributions to the home, and "[a]ny other factors the court considers appropriate."  *Id.* § 951-A(5).  The court "may rely on some factors to the exclusion of others."  *Jandreau v. LaChance*, 2015 ME 66, ¶ 16, 116 A.3d 1273.

[¶14]   The court here ordered Neri to pay Heilig $1,000 per month in spousal support for a period of thirty-six months and reached its decision based on findings supported by competent evidence in the record.  *See Ehret v. Ehret*, 2016 ME 43, ¶ 14, 135 A.3d 101 ("In applying the clear error standard, we will vacate a factual finding if it is not supported by sufficient, competent record evidence.").  The court found that Neri has an income of $74,000 from retirement funds and social security payments.  It found that Heilig has an income of $13,000 from mediation and imputed $17,800 to her for social

security payments for which she is eligible but has yet to opt to receive. The court further found that Neri is unemployable due to health issues, but Heilig could increase her income by taking on additional mediations. As Heilig acknowledges, the court's findings address many of the factors listed in section 951-A(5), including the length of the marriage, the parties' income and income potential, their employment history and education, their health and disabilities, and their standard of living during the marriage. *See* 19-A M.R.S. § 951-A(5); *Miele v. Miele*, 2003 ME 113, ¶ 11, 832 A.2d 760 (stating that "a court is not required to detail the rationale it uses to reach each finding of fact or conclusion of law").

[¶15] Although Heilig testified that, if she were to have a monetary "shortfall," she would need to sell some acreage of the Oyster River Road property in order to make ends meet, and that she is "always looking for work above and beyond" her current employment, we will not overturn the court's discretionary judgment based upon uncertain future events. *See Warner v. Warner*, 2002 ME 156, ¶ 48, 807 A.2d 607 ("[S]pousal support awards may not be based on speculative predictions of future economic circumstances."). For the same reason, we conclude that the trial court was correct not to speculate on Neri's potential income from renting the two other apartments

on the Thomaston property, despite testimony about the market value of the rentals—only one of which has been certified for occupancy. *See Ryan v. Ryan*, 1997 ME 136, ¶ 8, 697 A.2d 60 (stating that under unpredictable future economic circumstances, "[a] more appropriate approach would be to leave the . . . alimony award in place . . . thus preserving the ability of either party to reopen the relevant economic issues at a more propitious time").

C.     Attorney Fees

[¶16]  "Divorce courts may order a party to pay another party's attorney fees based on the parties' relative financial ability to pay the costs of litigation as long as the award is ultimately fair under the totality of the circumstances." *Urquhart v. Urquhart*, 2004 ME 103, ¶ 6, 854 A.2d 193; *see also* 19-A M.R.S. § 105(1) (2016).  The court may consider "all relevant factors that serve to create an award that is fair and just."  *Clum*, 1999 ME 77, ¶ 17, 729 A.2d 900 (quotation marks omitted).  The court must "provide a concise but clear explanation of its reasons for grant or denial of the fee award."  *Hebert v. Hebert*, 475 A.2d 422, 427 n.5 (Me. 1984).  Here, the court found that Neri "possesses superior financial assets and ability to pay and contribute to fees and costs," and therefore ordered him to contribute $2,000 towards Heilig's attorney fees and costs.  Although Heilig had requested $4,000, it was not

unreasonable for the court to award $2,000 in attorney fees, and we conclude that there was no abuse of discretion in the court's order.

The entry is:

Judgment affirmed.

---

Kelley E. Mellenthin, Esq., Lincolnville Center, for appellant Kimberly Heilig

Steven C. Peterson, Esq., West Rockport, for appellee Ernest P. Neri

Rockland District Court docket number FM-2014-259
FOR CLERK REFERENCE ONLY