MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2025 ME 41
Docket:         Cum-23-436
Submitted
  On Briefs:    April 24, 2024
Decided:        May 6, 2025

Panel:          STANFILL, C.J., and HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

PATRICK BOLDUC

v.

SAVANNAH (BOLDUC) GETCHIUS

DOUGLAS, J.

[¶1]  Patrick Bolduc appeals from a judgment entered in the District Court (Portland, *J. French, J.*) on his complaint for divorce from Savannah (Bolduc) Getchius.  Bolduc challenges the court's division of marital property, specifically the court's determination of the marital component of property he acquired prior to the marriage.  He further challenges the lack of findings as to the amount of child support owed him, the denial of his request for reimbursement of uninsured medical expenses that he incurred on behalf of the parties' children, and the award of attorney fees to Getchius.  We affirm in part and vacate in part.

## I. BACKGROUND

[¶2]  Bolduc and Getchius were married on October 15, 2011.  They have three minor children together.  On October 6, 2021, Bolduc filed a complaint for divorce.  Following two unsuccessful mediations, the court held a final divorce hearing on June 26, 2023.  On August 9, 2023, the court entered a judgment of divorce, awarding Bolduc sole parental rights and responsibilities with respect to the minor children[1] and dividing the parties' tangible and intangible property.

[¶3]  Regarding the parties' real property, the court made the following findings, which are supported by competent evidence in the record.  In 2002, prior to the parties' marriage, Bolduc purchased real property in Portland.  At the time of the marriage, the property's value was $175,000.  The residence on the property served as the family's home, and the parties made improvements to the property during the marriage, including painting, finishing the basement, building a new fence, erecting a shed, and adding new doors and appliances. These specific improvements increased the value of the property by $40,000. In addition, the overall condition of the property improved from "average" in 2011 to "good" and "very updated" in 2023.  At the time of the final hearing, the

---

[1]  Getchius consented to an award of sole parental rights and responsibilities to Bolduc.

property value had increased to $444,000, which represented an appreciation during the marriage of $269,000.[2]

[¶4]  Based on these findings, the court determined that the property was Bolduc's nonmarital property and set it aside to him.  Recognizing that nonmarital property can acquire a marital component and considering the applicable burdens of proof, the court rejected Bolduc's assertion that of the $269,000 appreciation during the marriage only $40,000 was marital.  The court determined that the entire amount that the property appreciated during the marriage was part of the marital estate.

[¶5]  With regard to child support, the court made the following findings. Bolduc has an annual gross earning capacity of $136,219 from his business, an insurance agency he acquired in 2002.  Getchius, a hair stylist, has an annual gross earning capacity of approximately $76,233.  While the divorce proceedings were pending, Bolduc paid all of the children's uninsured medical expenses, which amounted to approximately $5,000.  Based on the parties' earning capacities, the court ordered Getchius to pay $325 weekly in child

---

[2]  The court found that the property was encumbered by a mortgage on which the parties had made payments during the marriage and that the mortgage was refinanced on more than one occasion.  The court noted, however, that no evidence was offered as to the mortgage balance on the date of the marriage.

4

support for the three children, beginning December 10, 2021, which was the date on which proof of service of the divorce complaint was filed.[3]

[¶6] Finally, the court found that Bolduc had incurred $24,476 in attorney fees and that Getchius had incurred $72,294 in attorney fees. Taking into account the parties' circumstances and conduct during the litigation, the court ordered Bolduc to pay $10,000 of Getchius's attorney fees.

[¶7] On August 28, 2023, Bolduc filed a motion for further findings of fact and conclusions of law, *see* M.R. Civ. P. 52(b), and to alter or amend the judgment, *see* M.R. Civ. P. 59(e). Bolduc asked that the court amend its judgment to deny any request for an award of attorney fees, order Getchius to pay him $1,800 (representing 36% of the children's uninsured medical expenses incurred during the pendency of the divorce proceedings), and find that Getchius "incurred an arrearage of $26,575" in child support. With respect to the real property, Bolduc asked the court to amend its findings regarding the marital and nonmarital components of the property and to conclude that all but

---

[3] The record shows that on December 13, 2022, the court (*Cadwaller, M.*) entered an interim child support order, which was in effect until the divorce judgment was entered on August 9, 2023. The interim order required Getchius to pay Bolduc $150 per week in child support, which reflected a deviation from the child support guidelines, and 30% of the children's uninsured medical expenses. The court provided that the order was entered "[w]ithout prejudice and can be modified by final order."

$40,000 of the property's appreciation during the marriage was due to market forces and should be set aside to Bolduc as his nonmarital property.

[¶8] The court entered an order denying Bolduc's Rule 59(e) motion and granting in part his Rule 52(b) motion. With respect to the latter, the court made limited additional findings of fact. The court found that the attorney fees award was fair under the circumstances because Bolduc was "in a better position to bear the costs of litigation" and "ha[d] not shown by a preponderance of the evidence that [Getchius's] conduct contributed to the duration of litigation." The court found that Bolduc's testimony in support of his claim for uninsured medical expenses was "imprecise and conclusory" and that Getchius paid $2,250 in child support during the pendency of this matter. The court made no additional findings with respect to the real property.

[¶9] Bolduc timely appealed. *See* M.R. App. P. 2B(c)(2).

## II. DISCUSSION

### A. Standard of Review

[¶10] We review a court's classification of property as marital or nonmarital, *Young v. Young*, 2015 ME 89, ¶ 13, 120 A.3d 106, and its findings underlying a child support award, *Petersen v. Van Overbeke*, 2018 ME 104, ¶ 17, 190 A.3d 244, for clear error. We review a court's award of child support and

6

award of attorney fees for an abuse of discretion. *Id.*; *Viola v. Viola*, 2015 ME 6, ¶ 11, 109 A.3d 634. Because Bolduc timely filed a Rule 52(b) motion following entry of judgment, our review is limited to the facts expressly found by the court, *Sulikowski v. Sulikowski*, 2019 ME 143, ¶ 11, 216 A.3d 893, and "we cannot infer findings from the evidence in the record," *Douglas v. Douglas*, 2012 ME 67, ¶ 27, 43 A.3d 965.

## B.    Classification of the Real Property

[¶11]   Bolduc argues that the court erred in determining the marital component of the post-marriage appreciation of the real property. Specifically, he argues that the court improperly applied the burdens of proof and erred in finding that all the post-marriage appreciation was marital. *See* 19-A M.R.S. § 953(2)(E) (2025).

[¶12]  Title 19-A M.R.S. § 953 governs a court's disposition of property in a divorce proceeding. Section 953(1) requires a court disposing of property to "(1) determine what of the parties' property is marital and non-marital, (2) set apart each spouse's non-marital property, and (3) divide the martial property between them in such proportion as the court deems just." *Miliano v. Miliano*, 2012 ME 100, ¶ 14, 50 A.3d 534 (quotation marks omitted).

[¶13] Marital property is, with limited exceptions, "all property acquired by either spouse subsequent to the marriage." 19-A M.R.S. § 953(2)-(3). Nonmarital property includes, as relevant here, property acquired prior to marriage, *id.* § 953(2), as well as any "increase in value" of such property during the marriage, *id.* § 953(2)(E). What constitutes a nonmarital "increase in value" is limited to appreciation resulting from market forces or passively reinvested income or capital gains. *Id.* § 953(2)(E)(1). Appreciation resulting from marital labor, investment of marital funds or property, or reinvested income or capital gains if either spouse actively maintained the property does not constitute a nonmarital "increase in value" as defined by the statute. *Id.* § 953(2)(E)(2).

[¶14] A party claiming that property set aside as nonmarital has acquired a marital component due to post-marriage appreciation bears an initial burden of establishing that the property, in fact, has appreciated during the marriage.[4] *Warren v. Warren*, 2005 ME 9, ¶ 26, 866 A.2d 97. Because of the statutory presumption that all property acquired during the marriage is marital, the party need prove only that the property appreciated in "a

---

[4] Real property acquired prior to marriage can acquire a marital component in various ways, including through the investment of marital funds, labor, or property that reduces the mortgage balance or increases the value of the property. *See Miliano v. Miliano*, 2012 ME 100, ¶ 23, 50 A.3d 534. We discuss only the latter avenue because there was no evidence in the record of the mortgage balance at the time of the marriage, *see supra* n.2, thus barring any finding that the mortgage balance decreased during the marriage.

determinable amount" during the marriage. *Violette v. Violette*, 2015 ME 97, ¶ 21, 120 A.3d 667; *see Nilsen v. Hanson*, 1998 ME 109, ¶ 5, 709 A.2d 1190; *see also* Levy, *Maine Family Law* § 7.6[4][e] at 7-45 (8th ed. 2013) ("[I]f the increase in the value of property acquired prior to marriage occurs subsequent to marriage, the increase is subject to the marital property presumption."). The burden then shifts to the party urging that the appreciation should remain nonmarital to prove that the appreciation is a nonmarital "increase in value" as defined by section 953(2)(E)(1). *Warren*, 2005 ME 9, ¶ 26, 866 A.2d 97. If at any point in the analysis a party fails to sustain its burden, the court must resolve the issue against the party carrying the burden. *Ayotte v. Ayotte*, 2009 ME 20, ¶ 7, 966 A.2d 883.

[¶15] Here, there is no dispute that the real property appreciated during the marriage in a determinable amount. The court found, with support in the record, that the property was valued at $175,000 at the time of the marriage and at $444,000 at the time of the final hearing, resulting in appreciation during

the marriage of $269,000. Therefore, contrary to Bolduc's contention, the court did not err in finding that Getchius had met her burden.[5]

[¶16] The burden then shifted to Bolduc to rebut the presumption by showing that any or all of the appreciation was the result of market forces or passively reinvested income or capital gain. Bolduc offered unrebutted testimony from an expert appraiser establishing that specific physical improvements made to the property during the marriage—namely, painting, finishing the basement, building a new fence, erecting a shed, and adding new doors and appliances—accounted for $40,000 of the $269,000 appreciation in market value and that the remaining $229,000 was due to "changes in the marketplace."

[¶17] Bolduc contends that the trial court erred by not setting aside to him the remaining $229,000 as a nonmarital "increase in value" given that he established through his expert appraiser that the appreciation was solely the result of market forces. *See Warner v. Warner*, 2002 ME 156, ¶ 27, 807 A.2d 607. "As with any other testimony or evidence, the court may . . . evaluate the

---

[5] Bolduc contends that Getchius further had to demonstrate what portion of the appreciation during the marriage was attributable to the investment of marital funds, labor, or property. We reject Bolduc's contention primarily because his interpretation of the applicable burden runs afoul of the statutory presumption that "all property" acquired subsequent to marriage is marital property, 19-A M.R.S. § 953(2)-(3) (2025), but also because it undermines the burden-shifting framework established to apply the nonmarital "increase in value" exception in 19-A M.R.S. § 953(2)(E), *see Hedges v. Pitcher*, 2008 ME 55, ¶ 15, 942 A.2d 1217.

credibility of that evidence and reach a conclusion which accepts the valuation offered by one or the other of the witnesses, or a differing valuation based on the court's independent review of the evidence." *Wandishin v. Wandishin*, 2009 ME 73, ¶ 13, 976 A.2d 949; *see also Theberge v. Theberge*, 2010 ME 132, ¶ 18, 9 A.3d 809 (stating that determinations of weight and credibility are solely within the province of the fact finder). The court found, with support in the record, that "in addition" to the specific improvements to the property identified by Bolduc's expert, the overall condition of the home improved during the marriage as a result of marital labor and improvements to the home.[6] The court concluded that the evidence and the reasonable inferences to be drawn from the evidence were inadequate to establish that all but $40,000 of the appreciation during the marriage was Bolduc's nonmarital property. On this record, we cannot conclude that the trial court was compelled to find that Bolduc met his burden. *See Hedges v. Pitcher*, 2008 ME 55, ¶ 16, 942 A.2d 1217 (stating that if a party fails to demonstrate that appreciation of nonmarital property during the marriage was due to market forces or passively reinvested income or capital gain, the statutory presumption compels a finding that the

---

[6] The record contains evidence that the parties upgraded the property in other ways not identified by Bolduc's expert appraiser, including insulating the attic, paving the driveway, installing an irrigation system in the front yard, and tending to the landscaping.

appreciation is marital); *Handrahan v. Malenko*, 2011 ME 15, ¶ 13, 12 A.3d 79 (stating that a party who had the burden of proof at trial must demonstrate on appeal that a contrary finding was compelled by the evidence).

## C.    Child Support

[¶18]  Bolduc contends that the trial court erred or abused its discretion with regard to child support in two ways.  First, Bolduc argues that although the court correctly found that Getchius's child support obligation is $325 weekly beginning on December 10, 2021, the court should have expressly stated the amount that Getchius owes him rather than leave the calculation of that amount to the parties.  Second, Bolduc contends that the court abused its discretion by "ignoring its own findings" in denying his post-judgment motion requesting that Getchius be ordered to pay $1,800 toward the children's uninsured medical expenses that he incurred during the divorce proceedings. Neither contention is persuasive.

[¶19]  As to the first contention, the child support order incorporated into the judgment clearly requires Getchius to pay $325 weekly beginning on December 10, 2021.  The court made findings as to the parties' respective incomes, and those findings are supported by competent evidence in the record.  The court also found, with record support, that Getchius paid Bolduc

$2,250 during the pendency of the divorce proceeding. There is no requirement that the divorce judgment expressly state the total amount owed in this circumstance. *Cf. Bonville v. Bonville*, 2006 ME 3, ¶ 17, 890 A.2d 263 (stating that a court may, but is not required to, include in a divorce judgment a provision for child support arrearages accruing under an interim order and further that a failure to include such a provision does not extinguish the arrearages debt).

[¶20] As to the second contention, Bolduc's post-judgment motions requested that the court conclude that Getchius "shall be responsible for 36% of the uninsured medical expenses" and order that "execution shall issue in favor of [Bolduc] and against [Getchius] in the amount of $1,800." The court, citing M.R. Civ. P. 7(b)(5), declined to do so. *See* M.R. Civ. P. 7(b)(5) ("Motions for reconsideration of an order shall not be filed unless required to bring to the court's attention an error, omission or new material that could not previously have been presented.").

[¶21] The court found that Bolduc was "solely responsible for the children's uninsured medical expenses at a cost of approximately $5,000."[7]

---

[7] This finding was consistent with Bolduc's testimony that he paid 100% of the children's uninsured medical expenses in an amount "somewhere over [$]5,000." The record evidence does not establish, however, precisely *when* Bolduc incurred those expenses, only that they were incurred at some point during the pendency of the divorce proceedings:

Based on the parties' respective gross incomes, the court correctly calculated Getchius's proportional share of the children's uninsured medical expenses in excess of $250 as 36%.  *See* 19-A M.R.S. § 2006(4) (2025).  The child support order, which was made retroactive to December 10, 2021, provides that Getchius must pay 36% of the children's uninsured medical expenses "in excess of $250 per calendar year" with "[t]he first $250 of annual uninsured medical expenses [to] be paid by [Bolduc]."  Thus, Getchius is obligated to pay 36% of the children's uninsured medical expenses after the first $250 incurred in each calendar year.

[¶22]  The court did not err or abuse its discretion in declining to order Getchius to pay $1,800 toward the children's uninsured medical expenses. Bolduc neither proposed nor requested additional findings as to specifically when during the pendency of the divorce proceedings the expenses were incurred.  He simply referenced the court's finding that he has been "solely responsible for the children's uninsured medical expenses at a cost of

---

Q:  Have you also incurred uninsured medical expenses *since the commencement of the divorce*?
A:  Yes.
Q:  And have you paid 100 percent of that?
A:  Yes.
Q:  How much is that?
A:  It's somewhere over [$]5,000.

(Emphasis added.)

approximately $5,000" and asked the court to order Getchius to reimburse him $1,800, which is 36% of $5,000. In response, the court stated that it "d[id] not find that [Bolduc's] imprecise and conclusory testimony was sufficiently probative to permit the court to make an inferential judgment about the amount of uninsured medical expenses paid by [Bolduc]." Contrary to Bolduc's contention, therefore, the court was not "ignoring its own findings"—namely, that Bolduc had paid approximately $5,000 of the children's uninsured medical expenses during the pendency of the divorce proceedings—but rather, as we read it, was indicating that the record did not permit a calculation of the precise amount that Getchius owed given that Bolduc paid the expenses over a period that encompassed three separate calendar years.

**D.    Attorney Fees**

[¶23]  Bolduc argues that the court abused its discretion by ordering him to pay a portion of Getchius's attorney fees because the attorney fee affidavit submitted in support of Getchius's request for attorney fees included fees that were not related to the parties' divorce.

[¶24]   In the divorce judgment, the court stated that it took into consideration the relative financial circumstances and conduct of the parties, as well as all other factors, in determining the reasonableness of Getchius's

request for attorney fees. After finding, based on the attorney fee affidavit submitted by Getchius's attorney, that Getchius's "attorney fees and costs associated with this matter total $72,294," the court ordered Bolduc to pay $10,000 toward that amount. In asking the court to reconsider its award of attorney fees, Bolduc focused on Getchius's conduct during the proceedings[8] but also pointed out that the fee affidavit submitted by Getchius's attorney contained substantial fees related to other legal matters in which Getchius was involved that were not part of the divorce proceedings. In its post-judgment order, the court did not address Bolduc's argument about the unrelated legal fees.

[¶25] A divorce court may order a party to pay another party's attorney fees "as long as the award is ultimately fair under the totality of the circumstances." *Neri v. Heilig*, 2017 ME 146, ¶ 16, 166 A.3d 1020 (quotation marks omitted)*.* "Once a court has determined that a party is entitled to an award of attorney fees, it must thereafter evaluate an appropriate sum to award." *Miele v. Miele*, 2003 ME 113, ¶ 17, 832 A.2d 760. "The party seeking

---

[8] Bolduc contends that the court abused its discretion by failing to consider Getchius's conduct during the proceedings when fashioning its award of attorney fees. Contrary to Bolduc's contention, the court expressly stated that it took into consideration "whether the conduct of a party has contributed to the duration of litigation" and that it did not consider Getchius's "struggles with substance use as a factor that reasonably bear[s] on the fairness and the justness of the award." We discern no abuse of discretion. *See Smith v. Padolko*, 2008 ME 56, ¶ 17, 955 A.2d 740.

counsel fees must, at the very least, introduce an affidavit attesting to the plaintiff's fee agreement with the party's lawyer, counsel's customary hourly rate, and other such basic facts[] as necessary to allow the court to make a valid calculation as to what amount constituted reasonable counsel fees." *Id.* (alterations and quotation marks omitted). An attorney fee affidavit that fails to meet these requirements may be insufficient to support an attorney fee award. *See Viola*, 2015 ME 6, ¶ 12, 109 A.3d 634 (vacating an attorney fee award showing nonitemized amounts and unexplained work); *Nadeau v. Nadeau*, 2008 ME 147, ¶¶ 59-61, 957 A.2d 108 (vacating an award of attorney fees when the attorney fee affidavit did not itemize the services performed).

[¶26] The fee affidavit submitted by Getchius's attorney clearly reflected the fee arrangement with counsel and counsel's customary hourly rate, and it incorporated by reference itemized monthly invoices and a summary averring that the cost of the legal services provided to Getchius totaled $72,294. Some of the invoices, however, appeared to contain entries for work performed in other cases, including criminal and civil matters for which an award of attorney fees is impermissible. Other invoices contained entries without identifying in

which matter the representation occurred, making it impossible to determine whether the fees are subject to an attorney fee award.

[¶27] Although the authority to award attorney fees is well within the discretion of the court, the court's finding that Getchius's "attorney fees and costs associated with this matter total $72,294" is clearly erroneous. *See Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 18, 828 A.2d 210 ("The trial court's factual findings with respect to the award of attorney fees will be upheld unless clearly erroneous."). Therefore, based on this record, the attorney fee award is not justified by Getchius's counsel's affidavit. *See Baker v. Town of Woolwich*, 517 A.2d 64, 68–69 (Me. 1987) (vacating an award of attorney fees when a portion of the award was based on work in an action not subject to an attorney fee award). On remand, the court must recalculate the total amount of fees that are properly subject to an award of attorney fees in the divorce action and determine whether a different award of attorney fees is warranted.

The entry is:

> Judgment vacated as to the determination of attorney fees and affirmed in all other respects. Remanded for proceedings consistent with this opinion.

John F. Barnicle, Esq., and Matthew D. Lauzon, Esq., Moncure and Barnicle, Brunswick, for appellant Patrick Bolduc

Amy L. Fairfield, Esq., Fairfield & Associates, P.A., Lyman, for appellee Savannah Getchius

Portland District Court docket number FM-2021-701
FOR CLERK REFERENCE ONLY